No. 35,055

OSCAR McCOMAS, *Appellant*, v. JESS SANDERS and WILLIAM N. WOODWARD, doing business as SANDERS & WOODWARD LIVE-STOCK COMPANY, *Appellees*.

(109 P. 2d 482)

Opinion filed January 25, 1941.

*Roy C. Davis, Warren H. White, William H. Vernon* and *Eugene A. White,* all of Hutchinson, for the appellant.

*J. N. Tincher, Clyde Raleigh, A. Lewis Oswald, John Fontron,* all of Hutchinson, and *Leaford F. Cushenberry,* of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover for damages alleged to have been sustained by reason of defendants' negligence. The trial court treated defendants' motion to strike various allegations of the petition as though it were a demurrer and sustained it, and plaintiff appeals. He does not contend there was error in the method of treatment, but only that the result was erroneous.

The petition alleged that the defendants, as partners, conducted a sales yard in Hutchinson, handling all kinds of livestock; that the sales yard consisted of a central ring about sixty feet in diameter which was enclosed by a fence consisting partly of boards and partly of woven wire and that seats were arranged outside of the fence;

on December 9, 1938, plaintiff attended an auction sale of horses and secured a seat outside of the fence; there was a large attendance at the sale consisting of several thousand people, and defendants had permitted 150 to 200 people to come inside the fence and to stand 15 to 20 deep in places around the sales ring and inside the fence, and plaintiff, who attended for the purpose of bidding upon horses offered was unable to see and hear and was forced to leave his seat and to enter the enclosure in order to see the horses offered, hear the auctioneer and make himself heard as a bidder; that after he had entered the enclosure, one of defendants' helpers led a colt or young horse into the ring, it had not been halter-broke and was unused to crowds and attendant noise, and it became frightened and reared upon its hind legs and lunged into the crowd; the crowd gave way and jumped aside; but plaintiff on account of the confusion and numbers present was unable to get entirely out of the way and the wild horse came down and struck his foot. We omit all reference to injuries alleged to have been sustained. Plaintiff further alleged that his injuries were wholly and proximately the result of the negligence of the defendants: 1, in permitting their employee to lead a wild unbroken young horse into the center of the ring, where there were a great many customers who were in a position to be injured in case the animal became frightened and bolted; 2, in not warning plaintiff and others prior to the time the horse was led into the ring, so they might take precautions for their safety; 3, in permitting the unbroken and wild young horse to be led into the ring with only one attendant holding and leading it and with nothing but a rope halter to control it; and 4, in permitting an employee to lead a young horse into the sales ring which had not been halter-broke, under the circumstances described, when the defendants knew or should have known from their long experience in handling horses, that a young unbroken animal, in the presence of a crowd would be likely to become frightened and to rear and lunge about and injure one of the customers who was there for the purpose of bidding at the sale.

The first question for consideration is whether the petition charges actionable negligence on the part of the defendants. It is to be noted that that portion of the petition describing the manner in which plaintiff was injured, the animal was described as "a colt or young horse" which "had not been halter-broken" and as a "wild horse" and in that portion charging negligence it is referred to as "a wild unbroken young horse," and "unbroken young horse," and "unbroken

and wild young horse," "a young horse" and a "young unbroken animal," but in no place is it alleged that defendants had any knowledge that it was wild or vicious in any degree. The general rule is that the owner of a domestic animal not naturally vicious is not liable for injury done by it when it is in a place where it has a right to be, unless it is, to his knowledge, vicious. (See 2 Am. Jur., p. 728; 3 C. J. S., p. 1248; *Looney v. Bingham Dairy,* 70 Utah 398, 260 Pac. 855; *Splaine v. Eastern Dog Club,* 306 Mass. 381, 28 N. E. 2d 450, 129 A. L. R. 427, and the annotated note to the last citation.) And the rule is old. (See Exodus 21:28, 29.) A strict application of that rule would of itself justify the ruling of the trial court. In *Bertram v. Burton,* 129 Kan. 31, 281 Pac. 892, where a bull which was being driven along a public highway, broke into a fenced feed yard and caused injury to stock therein, it was said:

"The owner of a domestic animal is bound to take notice of the general propensities and characteristics of the class to which it belongs and must anticipate and guard against them if of a nature to cause injury, for he necessarily knows that some act causing injury will be committed if opportunity therefor is afforded." (p. 34.)

The quotation above is based on statements found in 3 C. J. 89. Reference to the cases cited in support of the text deal with the natural propensities of animals which are not vicious and not with the habits of vicious animals.

Insofar as the petition before us is concerned, there is no allegation the defendants owned the horse; the inference is to the contrary. There is no direct allegation the animal was not broken to lead with a halter, or that it was any different in character from any other young horse, or if so that the defendants knew thereof. If the adjectives used to describe the horse are sufficient to charge it was a vicious animal, there is no allegation the defendants knew of the viciousness. If we disregard those adjectives as charging viciousness and consider them only in the sense that it was meant to charge that rearing and plunging is a natural propensity of a colt or young horse, then we have to consider whether the manner of handling it was negligent. As stated in 3 C. J. S. 1253, the rule is that to avoid being negligent, the owner of the animal must use that degree of care to restrain that an ordinarily prudent person would have used.

The petition charges that defendants caused the unbroken young horse to be led into the sales ring without warning the plaintiff so

he could take precautions for his own safety, the horse being led in with nothing but a rope halter to control it. It must be remembered that this was an auction sale, where the usual practice is to lead a single animal in for exhibition to prospective purchasers, put up for sale and sold, to be followed by another animal where the same procedure is again followed. How would ordinarily prudent persons have done the same acts? Was the manner and method followed negligent? We think not. Every person who ever handled horses, even those having vicious traits, knows that the usual and ordinary method of leading and controlling horses is by the use of a halter and lead strap. Halters are sometimes made of leather straps, sometimes of rope, but both kinds serve the same purpose. There is no allegation there was anything wrong with the halter used or that it was defective in any way.

The allegation concerning failure to warn has a double aspect. If it was meant to charge that it was negligent to lead any horse, gentle or otherwise, into the sales ring without giving warning, it may be said that such is not the ordinary method of conducting a public sale. If it was meant to charge there should have been warning because the horse was vicious, then we are confronted with the fact there is no allegation defendants had knowledge. We are of opinion the petition failed to allege facts showing that defendants were guilty of any negligence which caused the plaintiff's injuries. It becomes unnecessary to discuss whether the plaintiff was guilty of contributory negligence or whether, by his own actions, he assumed the risk of being injured. We do note, however, that *Slaughter v. Sweet & Piper Horse & Mule Co.*, (Mo. App.) 259 S. W. 131, relied on by appellant as showing defendants were negligent and he was not guilty of contributory negligence, does not sustain his contention. There mules were turned into a sales ring without halters or other means of control, and were driven about by men using whips. One mule did not move as quickly as one of the men desired and he commenced whipping and beating the mule, which became wildly excited and bolted through the crowd in the sales ring, injuring the plaintiff. The case is clearly distinguishable from the one before us.

The judgment of the trial court is affirmed.