No. 44,364

Elizabeth Ellen Berry, a Minor by and Through Her Father, Next Friend and Natural Guardian, James C. Berry, *Appellant,* v. Charles H. Kegans and Claudia Kegans, *Appellees.*

(411 P. 2d 707)

Opinion filed March 5, 1966.

*John C. Frank,* of Wichita, argued the cause, and *Patrick F. Kelly* and *James P. Johnston,* of Wichita, were with him on the brief for the appellant.

*William P. Thompson,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, H. E. Jones, Jerome E. Jones, Robert J. Roth, William R. Smith* and *Robert J. O'Connor,* all of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

Price, J.: A six year old girl was bitten by her neighbors' dog. She brought this action—by and through her father—to recover damages.

A jury returned a verdict for defendants. Plaintiff has appealed.

Highly summarized, the facts are substantially as follow:

The girl—Elizabeth Ellen Berry—lived with her parents across the street from the Kegans—defendant owners of the dog. It was a suburban residential area of Wichita. For sometime the Kegans had owned a female Boxer dog named "Princess". She was bred to a grand champion, and of her litter the Kegans kept one pup for

a pet—a male which they named "Rocky". The two dogs were typical Boxers—well behaved, friendly, very strong and active. When chained out in the yard they often ran so hard that when they got to the end of the chain it would pull them down and they would "flip up" in the air. They were not especially "barking dogs", but Rocky would bark if a car drove by or when the postman, garbage man or paper boy came to the house. The Kegans were not concerned about Rocky biting or injuring anyone for he had never menaced or lunged at persons and no one had ever complained to them about him attacking or offering to attack anyone. He and Princess often were allowed in the house. When company came the dogs at times were permitted to remain in the house. On other occasions they were removed—depending on whether the visitors "appreciated dogs sniffing around them."

The Kegans had two young children and there were a number of other children in the immediate neighborhood. They played regularly in the Kegans house and yard and Rocky had never offered to harm any of them. Elizabeth (the plaintiff) had on occasion played in the Kegans house when Rocky was at large in the house and had played in the Kegans yard when he was tethered outside. He had never offered to harm her, and was particularly friendly with her younger brother. Parents in the neighborhood had felt no concern or worry about their young children playing in the Kegans yard when Rocky was chained in it. When visitors came the dogs would jump and "wag their tails" in typical dog-like fashion.

When the Kegans first moved into the neighborhood no leash law was in effect in the area and Princess was allowed to run loose. Later, when the area was annexed to the city she, like the rest of the dogs in the neighborhood, ran loose on occasion only late at night or early in the morning. When Rocky was a pup he was kept in the garage. He had never been permitted to run at large because the Kegans feared he might be hit by a car. When in the yard he always was on a chain.

On April 8, 1963, Rocky was 15 months old, stood 2½ feet high, and weighed about 40 pounds. He was chained in the middle of the Kegans yard on a seven foot chain anchored in the ground. At about 5 o'clock that afternoon Mrs. Kegans was in her kitchen when she heard both dogs barking. She went outside. The dogs were jumping up and down and barking and she saw three children, including Elizabeth, throwing mud clods at the dogs. The children

had mud clods in their hands and there were clods on the ground by the dogs. Elizabeth was near Rocky, but not within his reach. Mrs. Kegans talked to the children and told them to stop teasing the dogs and to play somewhere else for awhile. The children left and Mrs. Kegans went back into the house. A few minutes later the same children returned. Mrs. Kegans saw Elizabeth running through the yard and upon hearing her scream, ran outside. She found Elizabeth standing in the middle of the yard crying and with her hand bitten and bleeding. She was standing by Rocky within reach of where he was chained, but he was standing quietly. She told Mrs. Kegans that "Rocky bit me". Elizabeth said that she had been motioning toward Rocky and demonstrated by extending her hand out from her body to her arm's full length and pulling it back. She also said something about teasing Rocky and that apparently she had gotten too close to him after throwing the mud clods. Mrs. Kegans administered first aid and took Elizabeth across the street to her home, and later to a physician for treatment. In the doctor's office Elizabeth said something to the effect that she had not been told of Rocky's presence in the Kegans yards and that she did not know he was there.

Later, on a date not shown, this action seeking damages in the amount of $17,500.00 was filed. In it plaintiff charged the Kegans with negligence (1) in keeping and harboring an animal known to be vicious and dangerous, especially to children, in a heavily populated area constantly frequented by minor children, (2) in harboring a vicious animal within the city limits of Wichita in violation of a city ordinance, (3) in chaining Rocky in a place which was new and unusual on the day in question without warning the children of the neighborhood—and in particular, Elizabeth, (4) in failing to keep Rocky in the house or garage when defendants knew that children would be playing on or about the premises, and (5) in failing to muzzle Rocky on the day in question after chaining him in a place that defendants knew or should have known would be used by children of the neighborhood, including Elizabeth.

A full trial was had at which considerable evidence was introduced. Plaintiff made no objection to the instructions. The controlling one was—

"You are further instructed that dogs, even hunting dogs, have from time immemorial been regarded as friends and companions of man. The great majority of dogs are harmless, and the possession of characteristics dangerous to mankind is properly regarded as abnormal to them. The owner of a dog

is not liable for its biting, clawing, or injuring of a person unless the owner has reason to know that it is likely to do so and this knowledge was prior to the incident.

"In this case, if you find from the evidence that the Defendants CHARLES H. KEGANS and CLAUDIA KEGANS, or either of them, had reason to know that the Boxer Dog "Rocky" was likely to bite, claw or injure a person prior to April 8, 1963, then you should return a verdict for the Plaintiff, ELIZABETH ELLEN BERRY.

"On the other hand, if you find from the evidence that neither of the Defendants, CHARLES H. KEGANS NOR CLAUDIA KEGANS, had reason to know that the dog "Rocky" was likely to bite, claw, or injure a person prior to April 8, 1963, then you should find for the Defendants, CHARLES H. KEGANS AND CLAUDIA KEGANS."

As before stated, the jury returned a verdict for defendants, and plaintiff has appealed.

The above quoted instruction was in harmony with the general rule. In 4 Am. Jur. 2d, Animals, it is said:

"With regard to an animal not naturally vicious, the general rule, in the absence of statute, is that the owner of the animal is not answerable for injuries done by it when in a place where it had a right to be, unless it was, in fact and to the owner's knowledge, vicious or dangerous." (§ 86, p. 332.)

"Apart from statute, liability for bodily injuries caused by dogs falls within the general principles governing the liability for injuries caused by animals ordinarily harmless." (§ 94, p. 341.)

Also see 3 C. J. S., Animals, § 160, p. 1263.

In *McComas v. Sanders*, 153 Kan. 253, 109 P. 2d 482, it was held:

"The general rule is that the owner of a domestic animal not naturally vicious is not liable for injury done by it when it is in a place where it has a right to be, unless it is to his knowledge, vicious." (Syl. 1.)

Also see *Gardner v. Koenig*, 188 Kan. 135, 136, 360 P. 2d 1107.

In this appeal plaintiff complains of a number of things. One is the failure of the trial court to instruct the jury as to a criminal ordinance making it a misdemeanor to keep a vicious animal within the city of Wichita, and that a violation of a statute or ordinance is negligence if such violation is the proximate cause of an injury.

The contention is not good. Under the evidence in this case and in view of the only question for determination, the above quoted instruction—and to which no objection was made—adequately and correctly stated the law and pin-pointed the question for the jury.

Another complaint concerns an "explanation" of the quoted instruction—given to the jury in answer to a question by the jury during its deliberations. There is no occasion to detail the matter.

The further "instruction" has been examined and considered and it was in harmony with the instruction above quoted, and no prejudicial error may be predicated because of the incident.

Some complaint is made that the trial court erred in refusing to allow plaintiff to cross-examine her own witness Hutton—it being contended the witness became "hostile" to plaintiff while testifying. Reference to the record, however, convinces us that it may not be said the trial court abused its discretion in the matter.

Complaint also is made that plaintiff was precluded from showing who was the employer of the witness Baribeau, a claim adjuster. It appears, however, that the real purpose was to inject into the case the fact that defendants were covered by insurance, and the contention is without merit.

Plaintiff also complains that she was denied the right of "discovery," in that her motion for the production of an alleged signed statement by Mrs. Kegans to her insurance company was denied. Without deciding the matter, we merely say that, strictly speaking, perhaps the motion should have been allowed. It does not follow, however, that prejudicial error resulted from its denial. We also note that plaintiff took the deposition of Mrs. Kegans prior to trial and she also was cross-examined at length at the trial.

It next is contended the verdict is contrary to the evidence. We disagree.

Several other matters are argued by plaintiff but which we believe merit no discussion. In fact, plaintiff has raised nothing which may possibly be said to have resulted in prejudicial error or which conceivably could have changed the result of the trial. By statute (K. S. A. 60-2105), this court is directed to disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment of the trial court. Also see *Home Ins. Co. v. Atchison, T. & S. F. Rly. Co.,* 189 Kan. 316, 319, 320, 369 P. 2d 338, and cases cited in the opinion. By its verdict the jury simply found that prior to the time in question the owners of the dog had no knowledge or reason to know that it was likely to injure a person—and therefore—under the rule—were not liable in damages. It is clear that all parties had their day in court and that a fair trial was had.

No prejudicial error appearing—the judgment is affirmed.