No. 44,401

CARLA LYNN FREDRICKSON, a Minor, By CARL A. FREDRICKSON, JR., Her Father and Next Friend, *Appellee,* v. JOE MACKEY, Doing Business as SOMERSET STABLES, *Appellant.*

(413 P. 2d 86)

Opinion filed April 9, 1966.

*Robert P. Anderson,* of Olathe, argued the cause, and *Howard E. Payne, W. C. Jones, Keith Martin,* and *H. Thomas Payne,* all of Olathe, were with him on the brief for the appellant.

*Bernis G. Terry,* of Olathe, argued the cause, and *Roy S. Lowe, George A. Lowe,* and *Roy G. Lowe,* all of Olathe, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This action was by a minor for damages for personal injury resulting from a fall from a horse. Trial to the court resulted in a judgment for plaintiff from which defendant appeals.

In her petition plaintiff alleged in substance that on September 19, 1961, she was taking a riding lesson on a horse called Leather Britches owned by defendant and on his premises and under his supervision and control, and that while in a pasture the horse suddenly ran away, throwing plaintiff to the ground breaking her arm. Defendant was charged with negligence in allowing plaintiff to

ride a horse which was unmanageable by her outside the riding ring and in failing to give plaintiff proper instructions in the handling of the horse.

In his answer defendant denied negligence and alleged that the injury was caused in the following manner:

"The plaintiff Carla Lynn Fredrickson in company with other young people of her comparable age was taken with the group under the supervision of . . . Margo Thornhill out of the training ring for a ride in the open pasture of this defendant's premises; that the plaintiff rode her horse near a tree where she, the plaintiff, then broke off a small tree branch; whereupon she leaned forward from her normal mounted position and attempted to feed the leaves on the branch to her horse; that the horse did not shy but did start to trot and the plaintiff thereupon lost her balance and fell from the horse; that the horse she was riding, Leather Britches, is a horse normally and commonly ridden by children and is considered gentle and a proper horse for children, although the plaintiff by reason of her length of training as aforesaid had developed her ability to the point that she could have ridden horses of a less gentler nature and had it not been for her own negligence and improper conduct in attempting to feed her mount as aforesaid and thereby failing to keep her own balance and her mount under control her fall would not have occurred, and whatever injuries the plaintiff suffered . . . were the direct result of the plaintiff's lack of due care. . . ."

The evidence reveals that commencing in the spring of 1961 plaintiff, a girl aged ten years, along with other children of comparable age, had been taking riding lessons at defendant's stables on horses furnished by him for which a fee was paid. An older person who was an "associate" of the Mission Valley Pony Club acted as the instructor. Prior to the occasion in question, plaintiff had taken eight lessons at the stables, all of which had taken place inside a training ring near the barn, with plaintiff's mother as an observer. Her only other riding experience consisted of riding ponies elsewhere in a circle around a ring on two occasions. On September 19, 1961, plaintiff along with her mother and eight-year-old brother came to the stables for another riding lesson for the children. Five children, including plaintiff and her brother, rode out into a pasture adjacent to the training ring under the supervision of a Margo Thornhill, aged nineteen years, who had previously acted as instructor. The mother remained near the barn watching the children. Plaintiff was mounted on a horse called Leather Britches which she had previously ridden three or four times. Miss Thornhill took the children to a point in the pasture where there was a shallow creek bed. She demonstrated a crossing and then told plaintiff to ride across the creek after her and to stand

her horse and wait for the others. Plaintiff did this. While so waiting and still mounted plaintiff pulled a branch from a tree above her and leaned forward to put it under the nose of her horse for him to eat it, at which time the horse ran and plaintiff fell off breaking her arm.

The evidence offered by plaintiff to show the disposition of the horse consisted of the following testimony by plaintiff's mother:

"Q. Have they handled them pretty well, in your judgment, in the ring? A. They would have difficulty getting the horse to do what it was supposed to do even in walking or turning, or things like that. They had trouble.

"Q. And they couldn't get the horse to walk or they couldn't get it to stop, or what? A. Well, or to get it to turn or follow command. I don't just think that Carla could handle hers that well.

"Q. You felt Chris might be better able to do it than Carla? A. I think he was better on the horse than Carla was, yes. But not—

"Q. Well—excuse me. Go ahead and finish. A. —a whole lot better. But I felt he was doing some better.

"Q. It would be sometime they were taught to rein, weren't they? A. Yes.

"Q. This would be the time they would lay the rein over on the horse's neck and the horse wouldn't turn; is that correct? A. Yes, or wouldn't stop when they would try to get it to stop. . . ."

and of the testimony of the plaintiff:

"Q. . . . And what else did you learn to do in the ring besides make the horse go? A. Make it stop, and turn whichever way you wanted it to.

"Q. Did they teach you how to rein the horse on the neck to make him turn? A. Yes.

"Q. Would the horses that you rode do this? A. All except 'Leather Breeches'. I had quite a bit of trouble with him in the ring trying to make him turn.

"Q. He wouldn't want to turn? A. No.

"Q. And he took more pressure, did he, on the reins than the other horse? A. Yes.

"Q. But you were able to do it, weren't you, finally? A. Well, if Miss Thornhill helped me. Sometimes I had a lot of trouble with him, and then on other times he would do it with a little help from her.

"Q. And did you learn to trot? A. Yes, a little; not very much, though."

Plaintiff's evidence also showed the children had not been told not to feed the horses while mounted although they had occasionally in the past pulled grass while unmounted and fed it to the horses after finishing the riding lesson. While we are not particularly concerned with defendant's evidence or its weight, it did indicate that Leather Britches was a gentle seven year old horse of a good disposition which had been used two years by defendant as a

"lesson" horse for children and by a former owner as a riding horse for his nine and twelve year old children and that no accidents had ever occurred.

Defendant claims the evidence shows no acts of negligence which will support the judgment.

Although the relationship here arises contractually, the action is one for negligence and the ordinary rules of negligence apply, that is to say, negligence is never presumed but must be proven and shown to be the proximate cause of plaintiff's injuries.

The duty of one who is in the business of furnishing horses to others is to use reasonable care to furnish horses which are fit and suitable for the purpose for which they are to be used (4 Am. Jur. 2d, Animals, § 68, p. 315; 3 C. J. S., Animals, § 13a., p. 1098) and he is liable for a breach of that duty.

Applying this principle to the case at bar, we are unable to see any breach of this duty in the evidence, viewing it as we must in the light most favorable to plaintiff. We have detailed the only evidence pertaining to unsuitability, except some rebuttal testimony offered by plaintiff tending to impeach one of defendant's witnesses by showing a prior inconsistent statement. There was nothing indicating any bad or dangerous disposition or that the horse had misbehaved in any way. At most it does not indicate that the horse was unsuitable for a child of plaintiff's years and riding experience or to be ridden in the pasture with the instructor and the other children. Plaintiff had ridden the horse several times before. Her mother was present upon these occasions. Nothing unusual happened except plaintiff and her mother thought he needed stronger rein pressure than some of the other horses. This trait would hardly rise to the requisite level of unfitness nor is it made to appear how it contributed in any way to plaintiff's misfortune. The mother was present at all times and certainly was in a position to appraise the situation as to Leather Britches' suitability and her daughter's ability to control him outside the ring. Her action, or rather inaction, in doing nothing to interrupt plaintiff's ride on Leather Britches on the occasion in question might well be considered her assessment that the horse was in fact not unsuitable for the purpose intended. At best we cannot regard the evidence as sufficient to show either that Leather Britches was unsuitable or that defendant or any of those supervising the riding had or should have had knowledge of any trait or propensity in the horse

which might lead to the injury complained of. For all we can see from the evidence Leather Britches was a perfectly normal horse who responded in perfectly normal equine fashion to the intrusion of a branch thrust toward his head, and this was the cause of plaintiff's unfortunate accident.

In support of the judgment plaintiff relies further on the fact she received no instruction not to pull branches from a tree and attempt to feed them to the horse while mounted. Under the evidence we are not aware of any duty or standard of care violated. Certain hazards inhere in riding horses. Defendant in undertaking to furnish riding lessons would not become an insurer against all possibility of injury or accident or against the results of all unforeseen untoward acts of the rider even though the rider be ten years of age. He is bound only to use reasonable care commensurate with the circumstances.

In view of all that has been said we agree with defendant's contention that the record contains no evidence upon which the judgment for plaintiff can be supported. For similar conclusions in other cases in this type of situation, see those cited in the annotation in 15 A. L. R. 2d 1314, *et seq.*

The judgment is reversed.

APPROVED BY THE COURT.