No. 44,548

EARL L. McKINNEY, *Appellant,* v. HOWARD COCHRAN, *Appellee.*

(419 P. 2d 931)

Opinion filed November 5, 1966.

*Payne H. Ratner, Jr.,* of Wichita, argued the cause and *Payne H. Ratner, Louise Mattox, Cliff W. Ratner, R. R. Barnes* and *Jim Lawing,* all of Wichita, were with him on the brief for the appellant.

*Benjamin C. Langel,* of Wichita, argued the cause and *George B. Powers, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout* and *Phillip S. Frick,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, C. J.: This is an action for personal injuries sustained when a horse owned by defendant fell while being ridden by plaintiff at defendant's farm.

At the conclusion of plaintiff's evidence defendant's motion for a directed verdict was sustained. Plaintiff has appealed.

Highly summarized, the petition alleged that defendant lived on a farm and was the owner of a 12-year-old mare which weighed approximately 1,200 pounds. He was well acquainted with the character and disposition of the horse and knew that it was not a trained stock horse and had not been ridden regularly for that purpose.

On February 17, 1963, defendant invited plaintiff to his farm home for the purpose of inspecting and riding the horse. Plaintiff had never ridden it before and he was unfamiliar with the condition of defendant's farm premises. Defendant assured plaintiff that the mare was an agile and well trained stock horse. Plaintiff agreed to inspect and ride the horse and give his opinion as to its general quality as a stock horse. Plaintiff inquired as to the footing in the area adjacent to defendant's home and was assured the ground was secure and would provide good footing for the horse, even though it was not shod. Plaintiff mounted the horse and walked it into the adjacent area. It was his intention to check its ability to make turns in the manner of a trained stock horse. In the process of making a turn the horse moved its feet in an awkward manner and slipped on a concealed area of frozen ground. It fell on plaintiff's leg, resulting in severe injuries.

It was further alleged that defendant was negligent (1) in assuring plaintiff that the riding area near his farm home provided secure footing and contained no hidden hazards; (2) in failing to warn plaintiff that the horse was awkward and untrained and at least 12 years old and incapable of making the quick turning movements that are expected of stock horses; (3) in failing to inspect his farm premises for concealed hazards prior to inviting plaintiff to ride the horse, and (4) in failing to select a proper area on his farm for testing the riding qualities of the horse.

The answer denied generally, and alleged—

Plaintiff and defendant were close friends and shared a common interest in horses. On February 17, 1963, plaintiff and his wife were guests of defendant and his wife at defendant's farm home for social purposes. Plaintiff and defendant had been discussing defendant's recent purchase of the horse in question. Plaintiff, an experienced horseman, mounted the horse and started to ride it. The horse stumbled and fell, apparently due to the presence of ice below the

surface of the ground. If defendant was guilty of negligence—which was denied—plaintiff, being an experienced horseman and intimately familiar with the training of horses in general, knew that a horse on any given occasion might lose its footing and that plaintiff was in as good position as defendant to know the condition of the ground and was negligent in directing the horse to make sudden movements under the conditions existing. In the alternative, it was alleged that the horse fell due to an unavoidable accident which could not have been foreseen or guarded against.

The reply denied generally.

The case went to trial before a jury.

The background of the situation, and the actual facts of the incident as related by plaintiff's evidence, are as follow:

Plaintiff and defendant were railroad workers and had been friends for years. They had had many business dealings with each other involving cattle and machinery. As a sideline, plaintiff was interested in horses and, in fact, considered himself an "expert" on the subject. He had ridden horses since childhood and had "grown up on ponies" and had worked with horses and cattle most of his life. He had been a member of the Kansas Cutting Horse Association since 1956, and currently was president of the organization. A "cutting horse" is a horse trained to separate cattle from a herd. Over the years plaintiff had entered cutting horse contests and had won numerous titles and prizes. He was an expert rider.

Defendant, being somewhat of a novice on the subject of cutting horses, had purchased a horse in Nebraska. He was hopeful that it would be valuable as a cutting horse and naturally wanted plaintiff's expert opinion on the matter. On February 17, 1963, plaintiff came to defendant's farm home and "looked over" the horse. He commented that it was "a little on the drafty order" and was several years older than defendant had been led to believe. Plaintiff mounted the horse and rode it to a close-by area which was used by defendant as a garden plot in the summer. In the fall it was plowed and left fallow during the winter. There was nothing unusual about the area, it was in plain view, and it had been used by defendant in riding the horse. In "testing" the horse plaintiff first turned it to the right. He then turned it to the left—and the horse fell. The clear inference is the fall was due to the horse getting its feet tangled, or that it stepped on frozen ground and slipped. The horse had previously been ridden by defendant and his children and had never fallen or experienced any mishap.

As before stated, at the conclusion of plaintiff's evidence defendant moved for a directed verdict on the ground there was no evidence to go to the jury on the question of liability. The motion was sustained—and plaintiff has appealed.

Defendant raises a question as to the validity of the appeal. We pass the matter, however, and take the case on its merits.

The propriety of the order in question is governed by the rule that in reviewing an order sustaining a motion for a directed verdict the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon the motion must be denied and the matter submitted to the jury. (*Casement v. Gearhart,* 189 Kan. 442, 370 P. 2d 95.)

The allegations of plaintiff's petition have been summarized. Three of the four grounds of alleged negligence on the part of defendant were that he assured plaintiff that the riding area provided secure footing and contained no hidden hazards, that he failed to inspect his farm premises for concealed hazards prior to inviting plaintiff to ride the horse, and that he failed to select a proper area on his farm for testing the riding qualities of his horse.

It is unnecessary to labor the matter. Plaintiff was 37 years old and an experienced horseman. In the middle of February, in Kansas, it is common knowledge that open ground frequently is frozen on the surface—underneath—or both. The cleared garden plot in question was in plain view and nothing was "concealed." Plaintiff's own testimony was that from his experience in riding horses the ground appeared to be in good condition, that he observed from hoof marks that the horse had been ridden there and that from his saddle everything was in plain view and to him the footing appeared to be good and normal in every respect. There was no occasion for any "warning." As to the allegations in question there simply was no evidence from which a jury could find defendant to have been negligent.

The remaining round of alleged negligence on the part of defendant was that he failed to warn plaintiff that the horse was awkward and untrained, was at least 12 years old, and was incapable of making the quick turning movements expected of stock horses.

This point likewise requires but brief discussion. We have here a case where a self-admitted "expert" on horses voluntarily assumed

to test out the qualities of his friend's newly acquired horse. It was plaintiff who possessed the superior knowledge. To the knowledge of defendant and his children—who had ridden it—the horse had never fallen before. It had no known dangerous propensities, and the circumstances did not call for any "warning" by defendant. Certain hazards and risks inhere in riding horses. Even in those cases where one is injured by a "vicious" act, the rule is that the owner of a domestic animal, not naturally vicious, is not liable for injury done by it when it is in a place where it has a right to be, unless it is, to his knowledge, vicious (*Berry v. Kegans,* 196 Kan. 388, 391, 411 P. 2d 707, and authorities cited).

In the recent case of *Fredrickson v. Mackey,* 196 Kan. 542, 413 P. 2d 86, a young girl who was taking riding lessons—for pay—at defendant's stables and riding premises, was injured when the horse suddenly bolted and ran away. She recovered damages. On appeal the judgment was reversed on the ground there was no evidence to support the finding of negligence on the part of defendant. The facts of the case before us are even weaker for recovery than those of the Fredrickson case.

In an action for damages based on negligence, where no showing is made of any act or omission from which negligence can be inferred by reasonable minds, there is no submissible issue for the jury and in such cases it becomes the duty of the court to remove the issue from the jury. Here the evidence was such that reasonable minds could not accept it as sufficient to establish the existence of negligence on the part of defendant, and his motion for a directed verdict was properly sustained.

The judgment is affirmed.