(676 P.2d 150)

No. 54,391

RENEE GEORGE MERCER, *Appellant,* v. ELDEN FRITTS and BETTY FRITTS, *Appellees.*

Opinion filed February 2, 1984.

*Dan L. Wulz,* of Jones, Schroer, Rice, Bryan & Lykins, Chartered, of Topeka, for the appellant.

*J. Franklin Hummer,* of Davis, Unrein, Hummer & McCallister, of Topeka, for the appellees.

Before FOTH, C.J.; TERRY L. BULLOCK, District Judge, Assigned; and FREDERICK WOLESLAGEL, District Judge, Retired, Assigned.

WOLESLAGEL, J.: Appellant, Renee George Mercer (Renee) appeals from a summary judgment in favor of her social hosts, appellees Elden Fritts (Elden) and Betty Fritts (Betty). At Elden's invitation, she was riding an English-saddled American saddle-bred stallion on a suburban plot owned by her hosts. She had no difficulty until Elden saddled and rode a mare. When the stallion became aware of the mare, it became unruly, finally rearing and falling on Renee with resulting extensive physical injuries to her body.

The question before us is not so much what is injury-by-animal law or what is owner and occupier (premises) law, as it is which law applies to this occurrence. We find that animal law has significant relationship to this occurrence while premises law has no relationship at all. Accordingly we reverse.

Renee is one of the daughters of a lady who had recently married a nephew of the hosts. With her mother, her sister, and the nephew and his daughter, she had eaten a get-acquainted dinner at the hosts' 12-acre plot outside of Mayetta where Elden

kept two stallions and a mare. The group went outside and Elden saddled a middle-aged stallion he had owned since its birth and ridden for nine years. He rode it a few minutes for warmup, and asked Renee if she wanted to ride. She accepted.

Considerable detail as to the circumstances of the invitation and its acceptance were available at the hearing of the defendants' motion for summary judgment from depositions of the parties. The stallion was accustomed to the English saddle and had never before reared. Never before, however, had Elden ridden the mare near where someone else was riding the stallion.

Renee told Elden that she was an experienced rider, having had lessons and ridden for eleven years, including participation in some horse shows and rodeos, and was acquainted with the western saddle and bareback riding. Elden assured Renee that if she could ride bareback she would not have a problem with the English saddle which, unlike the western saddle, lacks a saddle horn. She was not told that he was going to ride the mare. She was given directions for general control of the horse and told that he was fairly spirited. He also told her to ride in the field north of the house, which she did.

Elden watched for awhile, and observing no difficulty, saddled the mare and rode it south and east of the barn. It was only when Renee was returning the stallion to the barn that she and the stallion noticed the mare. She got the stallion to the house where it became unruly and started turning in circles. Betty told her to take it to the barn. Instead, she ended up in the north field again where the stallion bucked and finally reared and fell backward on her. Injuries included a ruptured diaphragm, a collapsed lung and fractures of the pelvis and lumbar vertebrae.

Renee testified she thought Elden believed she was an experienced rider and had no intention of injuring her but was doing her a favor. She also thought she would have avoided injury bareback or with a saddle horn. Betty thought Renee was in trouble when she was back at the house, but in control when returning to the field. Elden thought Renee's riding was competent when he went to saddle the mare.

A veterinarian testified by deposition that stallions are not as trustworthy as geldings or mares and become excited because of their sex drive and other characteristics. As a class, the American

saddle-bred stallion is high-spirited and a stallion will on occasion "act up." He opined that Renee was not an experienced rider and should not have been put on the stallion, but, if allowed to ride the stallion, Elden should have put her in a controlled area and stayed with her.

Renee claimed Elden was negligent in furnishing a saddle that was inadequate and strange to her and also in bringing the mare out and arousing the stallion.

Defendant's summary judgment motion centered upon premises law in that Renee was an admitted licensee and neither gross negligence nor wanton conduct was pleaded. The sole issue before us is whether summary judgment was proper under the pleadings and evidence before the trial court. In arguing that it was not, Renee makes several assertions which we will abbreviate. They are:

1. Determining the duty owed to persons solely according to the type of mission that brings them to the premises should be abandoned and a reasonable duty of care depending on the circumstances should be adopted in its place.

2. Failing that adoption, at least an active negligence exception to premises law should be adopted.

3. The Kansas law that should apply in this case is not premises law but is injury by animal law as set out in PIK Civ. 2d 12.92.

The Kansas rule regarding consideration of motions for summary judgment is: The court should interpret the evidence available in the light most favorable to the party who resisted the motion. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶¶ 1, 4, 662 P.2d 1203 (1983).

### Amend Kansas Owners and Occupiers Law

Renee pulls out many stops in claiming it is archaic that our present law classifies the status of visitors and resulting duty owed to them. She points to writings suggesting that this law is a vestige of undue influence of the "landed gentry." She suggests that it is significant that the source of this law, England, has finally statutorily abandoned it. She points out that many states have now judicially substituted the ordinary tort standard: negligent conduct under all circumstances, coupled with foreseeability of possible injury ("fault," as it is now termed in PIK Civ. 2d). She is upset by what she considers to have been an erroneous interpretation of Hawkins, *Premises Liability After Repudi-*

*ation of the Status Categories: Allocation of Judge and Jury Functions,* 1981 Utah L. Rev. 15, as set forth in *Britt v. Allen County Community Jr. College,* 230 Kan. 502, 506-507, 638 P.2d 914 (1982). She is upset that injurious conduct is actionable if committed at location "X," but somehow becomes of no legal consequence if committed at location "Y," a foot north—or east—of location "X."

We are impressed but we are not moved. It is not that the members of this panel would oppose the substitution. It is simply that this court has a policy that prevents it from ruling contrary to recent holdings of our Supreme Court. As stated in *State v. Miller,* 6 Kan. App. 2d 432, 434, 629 P.2d 748 (1981), we are "duty-bound to follow the law as established by the Supreme Court of our state in the absence of some indication that it is departing from its previously expressed position." The same restraint is stated in *In re Lett & Jackson,* 7 Kan. App. 2d 329, 335, 640 P.2d 1294, *rev. denied* 231 Kan. 800 (1982) (concurring opinion), as being appropriate "unless a valid reason exists to believe the Supreme Court would reach a different result if it were to reconsider the issue." There can be no question that the majority of our Supreme Court rejected Renee's position in *Britt. Britt* was a recently decided case and controls here.

Renee invites us, nonetheless, to hold contrary to *Britt* because there has been some change since *Britt* in the composition of our Supreme Court. The invitation has no appeal. We decline to speculate on what some new justice might favor, or what change in attitude there might be as to justices serving at the time of *Britt.*

Active Negligence Exception to Premises Law

This concept was likewise addressed in *Britt,* and cases therein cited, and we must decline to hold that there is such an exception for the reasons given above.

Injury-by-Animal Law

A keeper's liability for injury caused by an animal is discussed generally in 4 Am. Jur. 2d, Animals § 104. This statement is the one most directly in point:

"Also, in an action for injuries sustained by a social guest when he was thrown off a horse owned by the defendant host, it was held that it was for the jury to determine whether the defendant was negligent where there was evidence to show that the horse was unsafe or untrustworthy for an experienced rider and that

the defendant knew this and knew also that the plaintiff did not possess sufficient experience to be permitted to ride the horse."

Restatement (Second) of Torts § 509(1) (1976), comes forth more clearly, providing:

"A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm."

Comment (e), however, says that while stallions have dangerous propensities, the law has not regarded them as subject to this strict liability.

Restatement (Second) of Torts § 518 (1976) appears to apply exactly:

"§ 518.  Liability for Harm Done by Domestic Animals That Are not Abnormally Dangerous

"Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,

"(a) he intentionally causes the animal to do the harm, or
"(b) he is negligent in failing to prevent the harm."

An explanation of the duty in § 518 is expanded in comment (e):

"e. This Section is applicable to those domestic animals of a class that can be confined to the premises of their keepers or otherwise kept under constant control without seriously affecting their usefulness and which are not abnormally dangerous. Although the utility of these animals is sufficient to justify their being kept without risk of the strict liability stated in § 509, many of them are recognizably likely to do substantial harm while out of control and, therefore, their keepers are under a duty to exercise reasonable care to have them under a constant and effective control. Thus there is a likelihood that even a well-broken mare or gelding that had never shown a propensity to bite or kick may do so when running loose. This is sufficient to require its keeper to exercise reasonable care to keep it under constant control."

Our Supreme Court specifically adopted this provision as "sound law and controlling of the decision herein" in the case of a person injured by cows at a sales pavilion. *Gardner v. Koenig,* 188 Kan. 135, 360 P.2d 1107 (1961). The injured party there was classed as an invitee, while in our present case Renee would be classed as only a licensee. We do not believe this difference in classification is significant. In our view, if the provision is sound law, the classification should be of no consequence at all. How-

ever that may be, we find nothing in more recent Kansas Supreme Court cases to indicate a departure from applying animal law to animal cases.

From our review of Kansas appellate decisions since *Gardner,* however, this case appears to be the first case with a factual basis clearly calling for the application of the Restatement provision. In *Berry v. Kegans,* 196 Kan. 388, 391, 411 P.2d 707 (1966), a young child was bitten by a chained dog. She and others had been throwing clods at the dog. At the time she was bitten, she was jabbing at the dog. From this set of facts came a pronouncement of no liability of the owner if an animal is "in a place where it had a right to be." Actually, the case is simply one of animal incitement to anger and invited injury.

*Fredrickson v. Mackey,* 196 Kan. 542, 413 P.2d 86 (1966) was a suit by a girl who was a student rider of a docile horse on her instructor's premises. She pulled a branch from a tree, and while mounted but leaning forward, attempted to feed the horse. It ran and she fell. Recovery was denied because there was no evidence tending to support any claim of the instructor's negligence. While it might be said that animal law only was applied (citing 4 Am. Jur. 2d, Animals § 68; and 3 C.J.S., Animals § 13a [now 3A C.J.S., Animals § 39]), it was not the Restatement provision. What applied related only to the instructor's duty to use reasonable care that suitable horses were furnished to students.

*Berry* was mentioned as being followed in *McKinney v. Cochran,* 197 Kan. 524, 419 P.2d 931 (1966), in which the plaintiff, an experienced horseman, was testing an old horse for its capability as a stock horse when it slipped on some icy underfooting. The court applied injury by animal law and didn't mention premises law even though the slipping of the horse was caused by the combination of ice on the premises and an awkwardness that defendant did not know was characteristic of his recently purchased animal.

In *Anderson, Administrator v. White,* 210 Kan. 18, 499 P.2d 1056 (1972), an elderly woman fell in a house when a dachshund ran between her feet and her walker. The defendants, owners of the house, did not know the dog was in the house. A school-age son of the defendants had let the dog in the house contrary to his father's direction. The parties handled the case as a premises

liability case. It appears our Supreme Court would have regarded it otherwise, had they the opportunity. As the opinion observes, "Plaintiff apparently made no objection to assuming the burden of proving wanton misconduct." The plaintiff had chosen for the case to go forward on a premises liability theory.

The final animal injury case is that of the injured bicycle rider frightened by a barking dog. *Henkel v. Jordan,* 7 Kan. App. 2d 561, 644 P.2d 1348 (1982). It lends nothing, however, as the rider was in the street.

As we interpret *Gardner, Berry,* and *McKinney,* we see some indication that if both animal and premises defects are involved in a case, the law to be applied depends upon which of the two causal factors is more significant. In our present case, the only alleged fault relates to acts and omissions on Elden's part pertaining to the horses, not to the premises.

The principle of injury-by-animal law of Restatement (Second) of Torts § 518 was adopted in this state by *Gardner* in 1961. We conclude that it is still our law. It is accurately reflected in PIK Civ. 2d 12.92. Further, we believe it is the appropriate principle to apply even if the injury occurs on the premises of the keeper of the animal so long as the condition of those premises in no way contributed to the injury. Since the facts in this case, taken most favorably to Renee, presented a factfinder's question as to defendants' negligence in their control of the stallion and showed no connection between the injury and any condition of the premises, it was error to grant summary judgment for the defendants.

Reversed and remanded for further proceedings.

FOTH, C.J., dissenting: While I might like to arrive at the same ultimate destination reached by my colleagues in this case, I find my way barred by the recent decisions of our Supreme Court, and in particular *Britt v. Allen County Community Jr. College,* 230 Kan. 502, 638 P.2d 914 (1982). Unlike my colleagues, I do not see the doctrine of "animal law" as affording a route around the obstacle posed by *Britt* and its immediate predecessors, *Zuther v. Schild,* 224 Kan. 528, 581 P.2d 385 (1978), and *Gerchberg v. Loney,* 223 Kan. 446, 576 P.2d 593 (1978).

As I read "animal law" authorities, they deal basically with defining the duty of care of an animal's owner or keeper. The

principles I distill come down simply to these: If the animal is inherently dangerous or known to be vicious, the keeper may be liable regardless of the degree of care taken to prevent harm. This is "strict liability" or "liability without fault." On the other hand, if an ordinary domestic animal is not known to be dangerous, liability exists only if its keeper failed to exercise reasonable care to prevent the harm. This latter basis for liability is ordinary negligence or, in PIK terms, "fault." Even then there may be no liability if the animal is in a place where it has a right to be.

Nothing in the cases cited by the majority do more than define the keeper's duty and determine whether it had been breached. Generally the determination is made with either explicit or implicit reference to the injured party's status, if on the keeper's premises, but sometimes with no apparent consideration to status at all. Thus, *Gardner v. Koenig,* 188 Kan. 135, 360 P.2d 1107 (1961), established a duty of due care in the handling of cattle owed to an invitee at a sales pavilion. It followed *McComas v. Sanders,* 153 Kan. 253, 109 P.2d 482 (1941), which found the same duty, with respect to a nonvicious horse, was also owed to an invitee at a sales ring. It was the latter case which first enunciated the principle:

"The general rule is that the owner of a domestic animal not naturally vicious is not liable for injury done by it when it is in a place where it has a right to be, unless it is to his knowledge, vicious." 153 Kan. 253, Syl. ¶ 1.

*Berry v. Kegans,* 196 Kan. 388, 411 P.2d 707 (1966), approved a "controlling" instruction that there could be no liability to a child, at best a licensee, who was bitten by defendants' dog, unless defendants knew the dog was vicious. Reliance was placed on the above quotation from *McComas.* Other allegations of negligence in keeping the dog and failing to warn were thus irrelevant, since lack of knowledge of the dog's vicious propensities absolved the defendants of liability.

*Fredrickson v. Mackey,* 196 Kan. 542, 413 P.2d 86 (1966), dealt only with the presence or absence of negligence of a stable owner in furnishing a horse to a customer. Plaintiff was an invitee, and negligence was the standard.

*McKinney v. Cochran,* 197 Kan. 524, 419 P.2d 931 (1966), involved a guest who fell when the owner's horse stumbled and slipped on a concealed icy patch. The court didn't characterize the guest's status on the premises but found he was a "horse

expert" who had come to test the horse and who had knowledge equal to the owner's, both as to the horse's characteristics and the condition of the ground. The court approved a directed verdict for defendant because there was no evidence of defendant's negligence to go to the jury. Whether there could have been liability if there had been submissible evidence of negligence was not addressed, perhaps because it was unnecessary to the decision.

The same uncertainty hangs over *Anderson, Administrator v. White,* 210 Kan. 18, 499 P.2d 1056 (1972). The only issue addressed was whether the dog's actions in injuring the plaintiff were or were not the result of defendants' willful or wanton misconduct. All parties assumed that was the standard that plaintiff, a social guest, had to meet to impose liability. The court did observe, without amplification, that plaintiff made no objection to assuming that burden. To my mind the statement only demonstrated that *which* rule of premises law was to be applied was not an issue. It did not indicate any judicial dissatisfaction with the theory under which the case was tried.

*Henkel v. Jordan,* 7 Kan. App. 2d 561, 644 P.2d 1348 (1982), involved a barking dog in the public street. As the majority notes, it gives no guidance either way.

Finally, in *Mills v. Smith,* 9 Kan. App. 2d 80, 673 P.2d 117 (1983), this court adopted the doctrine of strict liability in tort for the possessor of a wild animal that does harm to another, as set out in Restatement (Second) of Torts § 507 (1976). It also held that such liability was subject to the comparative fault principles of K.S.A. 60-258a. In that case a 21-month-old child, accompanying parents who were business invitees, was bitten by a lion. The issues were strict liability versus negligence and whether strict liability was to be compared to ordinary negligence. Premises law did not figure in the decision.

Applying these "animal law" cases to the present fact situation, the most I can come up with is that Elden, the owner of the mare and stallion, is not strictly liable for plaintiff's injuries. If he is to be liable it must be on the basis of "negligence" in his actions which are claimed to have contributed to those injuries: furnishing the unfamiliar saddle and bringing out the mare in front of the stallion. That is the extent of the conclusions I can draw from animal law.

It is at this point I run squarely into *Britt* and its predecessors. In *Britt* the plaintiff was judicially determined to be a licensee on the defendant college's premises. She was injured when a college employee dropped a piano on her foot. The court assumed this could have been found to be ordinary negligence, but found it could not rise to the level of wanton or reckless conduct. Adhering to the ancient doctrines of premises law the court found the college could not be held liable for injuries to its licensee even though those injuries might have been caused by its negligence. The court further refused to adopt an "active" negligence exception for injuries caused by affirmative acts of the landowner as opposed to the condition of the premises.

It is this latter aspect of *Britt* which seems to me to foreclose liability on defendants' part here. The plaintiff in *Britt* did not slip on an icy sidewalk or trip on a crack, she was hit with a piano. The plaintiff here did not slip or fall on any defect in the premises, she was thrown by a horse. In each case if there is to be liability it must be because of a breach of the defendant's duty of due care. The duty is imposed in one case by general principles of tort law, in the other by that special branch of tort law called "animal" law: each is nothing more nor less than the general duty of due care we all owe each other in our society. The Supreme Court has said, however, that one may negligently drop a piano on another with impunity so long as the injured person is but a licensee on the negligent actor's premises. I cannot see any meaningful difference between negligently dropping a piano and negligently using the wrong saddle or negligently exciting a stallion. Both types of conduct amount to nothing more or less than ordinary negligence.

Of course, I am likewise unable to see a meaningful difference between negligently injuring one's social guest in one's automobile and negligently injuring one's social guest on one's land. In the former instance even the legislature cannot immunize the negligent actor without running afoul of the constitution. *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974). In the latter, purely court-made immunity withstands all onslaughts. There must be subtleties in the distinctions made by our Supreme Court in those two instances which are based on policy considerations which escape me. It may be that similar distinctions exist that I similarly fail to perceive which justify the immunization of

negligent piano dropping but not of poor saddling and handling of horses. If so, then the majority is correct in finding potential liability in this case.

Nevertheless, for reasons set forth in the first portions of the majority opinion, dealing with our duty to follow the law as declared by our Supreme Court, I conclude that so long as *Britt* is the law of this state we are compelled to affirm the decision of the trial court.