(673 P.2d 117)

No. 55,265

DARCI LYNN MILLS, a minor, by VERNON E. MILLS and ALTHEA A. MILLS, her natural parents and next friends, *Plaintiff-Appellant*, v. RAY O. SMITH and MAUDE SMITH, *Defendants-Appellees* and MERLE BUCKBEE and ANN BUCKBEE, *Defendants-Appellants*.

Opinion filed December 15, 1983.

*J. Thomas Marten*, of Bremyer & Wise, P.A., of McPherson, for appellant.

*Robert R. Barefield*, of Corman & Barefield, Minneapolis, and *Howard Engleman*, of Hampton, Royce, Engleman & Nelson, of Salina, for appellees.

Before FOTH, C.J., SPENCER and PARKS, JJ.

PARKS, J.: The plaintiff, Darci Lynn Mills, by her natural parents, Vernon and Althea Mills, appeals a $99.20 judgment awarded her in a personal injury action based on injuries she suffered when bitten by an African lion owned by the defendants, Ray and Maude Smith.

On June 27, 1981, plaintiff, who was then 21 months old, together with her parents; grandparents, Merle and Ann Buckbee; and older sister Traci visited defendants' Circle 3 Ranch located near Longford, Kansas.

The male lion, named Chester, was approximately three-and-one-half feet long and weighed 90 to 100 pounds. Gary Clarke, the director of the Topeka Zoo, testified at the trial that nine-month-old cubs are very strong and dangerous animals. Cubs that age tend to wrestle and bite in play. It was his opinion that wild animals can never be truly tamed, although they can be trained.

The family observed Ray Smith wrestle and play with Chester and the adult family members took pictures of one another with the lion. Mrs. Smith testified that she warned them to keep the children away from the lion. Although they did not recall such a warning, the parents did not permit the children to approach Chester. Althea Mills stayed with her two daughters 30 to 50 feet from the lion while the grandparents took pictures. When Traci briefly distracted Althea, Darci ran off toward her grandparents, approaching from behind the lion, while Merle Buckbee was taking a photograph of his wife petting Chester. Merle and Ann Buckbee did not notice Darci until she had almost reached Chester. Chester reared up on his hind legs, knocked Darci to the ground, grabbed her head in his mouth and began working his jaws. Merle Buckbee immediately ran up and pulled Chester's jaws apart while Ann pulled Darci away.

Darci was taken to the hospital where a cut on her head required four stitches and another behind her ear required three. Her cheek was scratched and there was a puncture wound on her forehead. The medical bills totaled $248. A psychiatrist testified at the trial that Darci suffered a "mild adjustment disorder" that had largely resolved itself. It was his opinion that she would not remember the incident.

The plaintiff filed this action against the Smiths seeking punitive damages in addition to $60,000 in actual damages. The Smiths named the Buckbees as additional defendants.

The jury attributed 40% of the fault to the Smiths, 50% to Althea Mills and 10% to the Buckbees. The jury awarded no punitive damages and found that the plaintiff suffered $248 in actual damages. The trial court entered judgment for $99.20 and awarded costs to the plaintiff. Plaintiff appeals.

Plaintiff argued at trial that defendants as owners of a wild animal were strictly liable for injuries caused by it and that consequently, plaintiff's parents and grandparents could only be found at fault if they knowingly and unreasonably subjected her to the risk of harm. Defendants contended that strict liability was not applicable but that in any event, comparative negligence should be applied to compare the fault of all of the parties. The trial court instructed the jury that the keeper of a wild animal is strictly liable for injuries resulting from the animal's dangerous propensities. In addition, the court refused to adopt plaintiff's

proposed instructions concerning the standard of care to be applied against the parents' conduct and instead gave instructions for comparative negligence to be applied based on a definition of simple negligence.

Our research has not uncovered any Kansas cases concerning the extent of liability for injuries caused by a wild animal. However, the traditional rule is that owners of wild animals are strictly liable. 4 Am. Jur. 2d, Animals § 80, p. 327; 3A C.J.S., Animals § 171; Annot., 21 A.L.R.3d 603. This rule is embodied in the Restatement (Second) of Torts § 507 (1976) which states as follows:

"(1) A possessor of a wild animal is subject to liability to another for harm done by the animal to the other, his person, land or chattels, although the possessor has exercised the utmost care to confine the animal, or otherwise prevent it from doing harm.

"(2) This liability is limited to harm that results from a dangerous propensity that is characteristic of wild animals of the particular class, or of which the possessor knows or has reason to know."

Kansas cases involving domestic animals with vicious propensities appear to impose strict liability on owners with knowledge of the viciousness. *Carl, Administratrix v. Ackard,* 114 Kan. 640, 644, 220 Pac. 515 (1923); see also PIK Civ. 2d 12.91. Therefore, we conclude that strict liability is appropriate in cases involving wild animals and adopt the rule as set out above in § 507 of the Restatement.

Plaintiff concedes that the comparative fault principles of K.S.A. 60-258a are applicable to strict liability cases but contends that the parents' negligence may only be compared if they knowingly and unreasonably subjected plaintiff to risk. Essentially, plaintiff is arguing that because defendants were strictly liable, the jury should have been instructed to compare the fault of plaintiff's custodians to that of defendants only if they found the custodians' conduct to be more culpable than an act of simple negligence.

It has now been established beyond question that actions based upon strict liability in tort are subject to K.S.A. 60-258a. *Lester v. Magic Chef, Inc.,* 230 Kan. 643, 645, 641 P.2d 353 (1982). In addition, our court has rejected the argument that the fault underlying a negligent act may not be compared to the fault associated with strict liability because of a difference in degree. *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368,

373, 634 P.2d 1127 (1981). All types of fault, regardless of degree, are to be compared to apportion causal responsibility for an accident. *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449 (10th Cir. 1982). Therefore, whether a defendant's fault stems from negligence or commission of an act for which one is strictly liable, his fault must be compared by the jury to that of any other party who may have contributed to the injury.

To have instructed the jury as argued by the plaintiff would have required the jury to have found that the parties other than defendants engaged in conduct at least as culpable as that of defendants before being entitled to compare the proportion of liability of all involved. Such a result would clearly have been contrary to the view taken by the recent Supreme Court cases.

We have examined the requested instructions and the instructions that were given and find that the jury was properly instructed regarding the doctrine of strict liability and comparative negligence. We conclude that the trial court did not commit error in refusing to give the instructions requested by the plaintiff.

Next, plaintiff asserts that the trial court abused its discretion in granting defendants' motion in limine excluding evidence of prior complaints from neighbors that the lion was permitted to run free. The proffered evidence was a letter from the Clay county attorney dated February 3, 1981, informing Mr. Smith of complaints that he let Chester run free and warning him of possible criminal penalties under K.S.A. 21-3418. Plaintiff argues that the letter is relevant to the issue of punitive damages and tends to show that the defendants wantonly disregarded prior warnings.

We find this argument to be without merit because (1) the lion was chained on the day plaintiff was injured and not running free; (2) evidence of specific instances of conduct is not generally admissible to prove the quality of a party's conduct on any later occasion, see *Hampton v. State Highway Commission*, 209 Kan. 565, Syl. ¶ 8, 498 P.2d 236 (1972); and (3) the letter was subject to the trial court's broad discretionary power to exclude relevant evidence when the risk of unfair prejudice outweighs probative value. *Schaeffer v. Kansas Dept. of Transportation*, 227 Kan. 509, 518, 608 P.2d 1309 (1980). No abuse of discretion is shown.

Next, it is contended that the trial court abused its discretion in excluding enlargements of certain photographs. The pretrial

order required the parties to file all exhibits no later than fourteen days before the trial date. Before trial the defendants stipulated that the 4" x 6" prints were admissible. On the day of the trial the plaintiff offered the enlargements. The trial court sustained the defendants' objection on the ground that the plaintiff had not shown the enlargements to the defendants, but admitted the smaller prints into evidence.

A pretrial order controls the course of the action unless modified to prevent manifest injustice. *Sieben v. Sieben,* 231 Kan. 372, 376, 646 P.2d 1036 (1982); K.S.A. 60-216. Moreover, the trial court noted that the enlargements showed nothing more than the smaller prints and there is nothing to indicate that the plaintiff's rights were prejudiced. We conclude that the trial court did not abuse its discretion in denying plaintiff's request to admit the enlargements.

Finally, plaintiff argues that the trial court erred in denying her motion for a directed verdict that the defendants were 100% at fault and contends there was insufficient evidence to support the verdict.

This court in *Putter v. Bowman,* 7 Kan. App. 2d 323, Syl. ¶ 1, 641 P.2d 411, *rev. denied* 231 Kan. 801 (1982), set out the standards governing directed verdicts as follows:

"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and when the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict."

A similar standard governs review of the sufficiency of evidence:

"When a verdict is attacked on the ground it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the successful party below, will support the verdict this court should not intervene." *Timsah v. General Motors Corp.,* 225 Kan. 305, Syl. ¶ 1, 591 P.2d 154 (1979).

Following the above standards, we conclude that the trial judge was correct in submitting the comparative fault issue to the jury, and further, that the verdict in this case is not contrary to the evidence.

Affirmed.