DONALD RUSSELL, Circuit Judge:
Does our holding in A.H. Robins Company v. Piccinin, 788 F.2d 994 (4th Cir.), cert. denied, —. U.S. -, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), apply when the plaintiff-claimants seeking to sue the third-party defendant disavow any interest in the debt- or’s assets, and when the plaintiffs agree to so limit their discovery that they do not interfere with the debtor’s rehabilitative process? We hold that under such circumstances the court has authority to stay the suit against the third-party defendant because that third party would inevitably be required to put a burden on the debtor in order to defend against the plaintiffs. We therefore affirm the district court’s denial of the motions to lift the stay.
I.
The facts leading up to this litigation have been set forth in detail in Piccinin, so we need only review them briefly here. In Piccinin a group of plaintiffs, who claimed they were injured by the Daikon Shield intrauterine device, sought to sue Aetna Casualty & Surety Company for its actions in connection with the Daikon Shield. The Daikon Shield was manufactured by A.H. Robins Company which has filed for reorganization in bankruptcy. Aetna, as Robins’ product liability insurer, allegedly (1) took over from A.H. Robins the monitoring of the device while in útero, (2) took over from Robins the decision whether or not to recall the device, (3) concealed the fact that Robins had destroyed evidence, and (4) commissioned and then concealed the results of at least eight studies that showed defects in the device.
We held, in Piccinin, that the district court had four independent grounds on which it could stay the plaintiffs’ suit against Aetna. Two of these grounds related to the fact that the plaintiffs in that suit sought damages out of the proceeds from the product liability insurance policy that Robins had purchased from Aetna. We found that a stay was authorized under 11 U.S.C. § 362(a)(1)[1] because there was such identity between the debtor (Robins) and the third-party defendant (Aetna) that a judgment against Aetna would in effect *1025 be a judgment against Robins. We also found that a stay was authorized under 11 U.S.C. § 362(a)(3)[2] because Aetna might seek indemnification from Robins for any damages it had to pay, thus implicating the debtor’s property.
We also found two equitable bases for the court’s authority to stay the third-party suit. Both 11 U.S.C. § 105 [3] and 28 U.S.C. § 1334 [4] give the court general equity power to stay litigation that could interfere with the reorganization of the debtor. In addition to jeopardizing the debtor’s property, we said, the litigation would adversely affect the reorganization because it would subject Robins’ officers, directors, and employees to extensive discovery.
The appellants in the present cases have carefully drafted their complaints in an attempt to distinguish them from Piccinin. Appellant Oberg, who represents a group of 39 plaintiffs, and appellant Anderson, who represents a group of 4,007 plaintiffs, tried to sue Aetna for its actions in connection with the Daikon Shield. Both appellants sought recovery solely from Aetna’s own assets and solely for Aetna’s own actions. They also both agreed not to depose any of Robins’ officers, directors, or employees without prior permission of the court. They anticipate that taped depositions currently available to them will be adequate to support their cause.
Anderson originally filed her suit against Aetna in federal district court in Kansas. That court dismissed her suit without prejudice in deference to the automatic stay provisions of 11 U.S.C. § 362(a). On October 7, 1986, Anderson sought permission from the Virginia district court hearing the bankruptcy petition to refile her suit in Kansas. On the same day, Oberg sought permission from the Virginia court to file an identical action in New Hampshire. The court refused to lift the stay in either case. It did not discuss any of the bases for the stay that we articulated in Piccinin. Instead, it noted that there was already a suit against Aetna for negligence, strict liability, breach of express warranty, fraud, civil RICO, and civil conspiracy. This suit, Breland v. Aetna Casualty & Surety Co., 86-0315-R (E.D.Va.), requested certification of two classes, one composed of all Daikon Shield claimants who have product liability suits now in court or who commence such suit within 36 months, and the other composed of all other persons with potential Daikon Shield product liability claims.
The court ruled that both Anderson’s and Oberg’s suits were duplicative of Breland, and it therefore denied the relief requested. It dismissed the cases without prejudice, subject to refiling if the Breland matter did not fairly and adequately dispose of their concerns. The court has since conditionally certified the classes in Breland.
On January 13, 1987, Oberg filed with the court a second request to lift the stay on the ground that Breland does not adequately address her concerns. The court again denied the request, principally on the ground that it was premature.
II.
Aetna concedes that section 362(a)(1) is inapplicable in the present case because the complaints expressly exclude any recovery from Robins’ insurance proceeds. Therefore, it cannot be said that there is such identity between the debtor and the third-party defendant that a judgment against Aetna would in effect be a judgment against Robins.
The appellants contend that section 362(a)(3) also is inapplicable because both New Hampshire and Kansas have adopted *1026 the doctrine of comparative negligence and generally do not permit contribution or indemnity among joint tortfeasors. See, e.g., Hurley v. Public Service Company, 123 N.H. 750, 465 A.2d 1217 (1983); Consolidated Utility Equipment Services, Inc. v. Emhart Manufacturing Corporation, 123 N.H. 258, 459 A.2d 287 (1983); Mills v. Smith, 9 Kan.App.2d 80, 673 P.2d 117 (1983); Brown v. Keill, 224 Kan. 195, 580 P.2d 867 (1978). Although Aetna contends that these cases do not fully resolve the issues of contribution and indemnity, we will assume, without deciding, that under both New Hampshire law and Kansas law, a suit against Aetna based solely on its own negligence would implicate no property of the debtor A.H. Robins and thus would not be precluded by section 362(a)(3).
Our examination of the equitable bases for a stay produces a contrary conclusion. Under section 105, the court has authority to issue any order “that is necessary or appropriate to carry out the provisions of this title.” In re Otero Mills, Inc., supra. To enjoin a creditor’s action against a codebtor under section 105, the debtor must show, inter alia, irreparable harm to the bankruptcy estate if the injunction does not issue. Because we have already determined that these actions pose no direct threat to Robins' property, we confine our analysis to other kinds of harm. In the context of this case, that harm would be the burden placed on Robins’ officers, directors, and employees, which would exhaust their energies and thus interfere with the debtor’s reorganization.
The appellants contend that there would be no burden on Robins because the plaintiffs have agreed not to depose any of Robins’ officers, directors, or employees, or otherwise subject them to the costs of litigation. Although we applaud the plaintiffs’ efforts to simplify and streamline the litigation, these efforts are not enough. Oberg and Anderson can agree not to impose any of the burdens of litigation upon Robins, but they cannot compel Aetna to follow the same hands-off policy.
Inevitably, Aetna must involve Robins in this litigation. Aetna’s primary defense logically will be that Robins — not Aetna — is responsible for the injuries suffered by these plaintiffs, and that any detrimental actions taken by Aetna were on behalf of or at the direction of Robins. Under a system of comparative negligence, the trier of fact must determine Robins’ relative fault in order to determine Aetna’s relative fault. Despite the plaintiffs’ good intentions, Robins will inexorably be drawn into this litigation. Because this involvement will put a substantial burden on Robins, it will detract from the reorganization process. We therefore hold that under section 105, the court had authority to stay these actions.
The appellants contend that there is a countervailing equity based on statutes of limitations. New Hampshire already has the longest statute of limitations in the country for this kind of action (6 years), and actions there could be barred by the delay of these suits. The appellants suggest that Aetna has refused to accept the notion that a bankruptcy stay tolls the state statutes of limitations. We have no authority, of course, to make determinations regarding New Hampshire or Kansas law. It is our view, however, that by seeking the protection of the court under the bankruptcy laws, Aetna implicitly waives its right to claim that this stay does not toll the state statutes of limitations. Our system of law universally frowns on a party who would use the stay as both a sword and a shield.[5]
III.
In her second suit, Oberg requested that the court lift the stay on the ground that Breland, the class action against Aetna, did not adequately address her concerns. We agree with the court that this is premature.
*1027 “[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an ‘opt out’ or ‘request for exclusion’ form to the court.” Phillips Petroleum Company v. Shutts, 472 U.S. 797, 812, 105 S.Ct. 2965, 2975, 86 L.Ed.2d 628 (1985). Oberg has not yet been offered the opportunity to opt out of Breland, and we are unwilling to assume that when the opportunity arises, she will choose not to participate in the class action. Her decision at that date could be influenced by numerous factors, including the knowledge that if she chooses to opt out, she must still seek the permission of the court in bankruptcy in order to bring a separate suit in New Hampshire. We offer no opinion as to whether Shutts requires the court at that time to make available an alternative timely remedy to plaintiffs who “opt out” of the class.
The court below dismissed these suits without prejudice, subject to refiling if the Breland matter does not fairly and adequately dispose of their concerns. At this juncture, we believe that that decision best protects the interests of all parties. Therefore, we
AFFIRM.

. Section 362(a)(1) imposes an automatic stay of any proceeding "commenced or [that] could have been commenced against the debtor” at the time of the filing of the Chapter 11 proceeding.

. Section 362(a)(3) directs stays of any action, whether against the debtor or third parties, to obtain possession or exercise control over property of the debtor.

. Section 105 empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” In re Otero Milts, Inc., 25 B.R. 1018 (D.N.M.1982).

. Section 1334 grants the "inherent power of courts under their general equity powers and in the efficient management of the dockets to grant relief’ by staying a third-party suit. Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir.1983).

. The appellants also contend that Aetna is equitably estopped from arguing in favor of the stays in these suits because this is inconsistent with Aetna’s actions in Breland, supra. The short answer to this is that there can be no equitable estoppel without detrimental reliance. See, e.g., Heckler v. Community Health Services, 467 U.S. 51. 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). There is no evidence that the appellants relied on Aetna’s conduct in such a manner as to change their position for the worse.