UNITED STATES of America,
Plaintiff–Appellee,

v.

Glenda BLANTON and Gary Cree,
Defendants–Appellants.

Nos. 88–1866, 88–1875.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1988.

Decided Sept. 5, 1989.

Rehearing and Rehearing In Banc
Denied Nov. 2, 1989.

---

Deborah J. Daniels, U.S. Atty., Jack Thar and Melanie Conour, Asst. U.S. Attys., Indianapolis, Ind., for U.S.

William Wurster, Poore, Wurster, Sullivan, Fairman, Sobel & Strunk, Indianapolis, Ind., for Glenda Blanton, defendant-appellant.

Richard L. Darst, Steven J. Glazier, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, Ind., for Gary Cree, defendant-appellant.

Before CUMMINGS, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Defendants-appellants Glenda Blanton and Gary Cree appeal their convictions of conspiracy to possess with intent to distribute, and possession with intent to distribute, more than one gram of LSD and of distribution of less than one gram of LSD and marijuana to a person under the age of 21. They challenge both the sufficiency of the evidence to convict them and the district court's admission into evidence of two packages containing large quantities of different types of LSD. For the reasons discussed below, we affirm.

## I. Facts

Glenda Blanton and Gary Cree were charged in a four-count indictment. Count One charged them with conspiring to violate 21 U.S.C. § 841(a)(1) by possessing with intent to distribute LSD in an amount

greater than one gram, in violation of 21 U.S.C. § 846. Count Two charged Blanton and Cree with possessing with intent to distribute more than one gram of LSD, in violation of 21 U.S.C. § 841(a)(1). Counts Three and Four of the indictment charged the defendants with distributing less than one gram of LSD and marijuana, respectively, to a person under the age of 21, in violation of 21 U.S.C. § 845(a). A jury convicted Blanton and Cree on all four counts.

The facts underlying these convictions are as follows. On June 30, 1987, Drug Enforcement Administration Special Agents Gary Alter and Howard Oberst went to the Indianapolis apartment of Scott Canatsey. Alter and Oberst were attempting to purchase LSD and cocaine from Canatsey as part of an investigation to determine and identify the source of large quantities of LSD and cocaine being distributed in the area. The agents made several drug purchases from Canatsey, including 500 units of barrel-type LSD on April 29, 1987, which Canatsey had purchased from a man named Jeffrey Lynn, and 1,500 units of musical-note LSD on July 13, 1987, which Canatsey had obtained from a different source.

Canatsey was not present when agents Alter and Oberst arrived at his apartment on June 30, 1987, but his girlfriend, Angela Dawn Franklin, let them into the apartment. Franklin introduced the agents to Cree and Blanton. According to Alter's testimony, Blanton, who was holding an infant, sat in the only chair in the living room, and Cree was sitting on the floor next to her. Agent Oberst and Franklin sat together on the other side of the room. Alter testified that Cree told him that he (Cree) was there to purchase two hundred dosage units of LSD and an eighth of an ounce of cocaine from Canatsey. Cree stated that he and Blanton were going to a rock concert that night and that he was going to sell some of the LSD there.

While everyone was waiting for Canatsey to arrive, a young woman named Chelsey Calvert came to the apartment. She went to Cree and asked if she could purchase two marijuana cigarettes and some LSD. According to Alter's testimony, Cree took a clear plastic bag of loose marijuana from Blanton's purse, put some of it in a cigarette cellophane wrapper and handed it to Calvert. Cree then took a large plastic container in the shape of a capsule from Blanton's purse, and took out a small clear cellophane package containing what appeared to be LSD. Cree took at least one dosage unit of the LSD and handed it to Calvert in another clear plastic bag. Calvert paid Cree eight dollars, and Cree put the money in Blanton's purse.

After Calvert left, Cree handed the cellophane package he had taken from Blanton's purse to Alter, telling him that this was the type of LSD he was waiting for Canatsey to bring him. Alter testified that this package contained barrel-type LSD of the type contained in Government Exhibit 5 (about which more later). A short while later, Canatsey returned to the apartment. It was then that Cree purchased from Canatsey what appeared to Alter to be cocaine and red or purple barrel LSD, the same type of LSD Alter said that Cree sold to Calvert. Alter claims he could tell what these substances were because they were passed in front of him. Cree paid Canatsey for the drugs from money taken from Blanton's purse.

At trial, several defendants testified about Government's Exhibits 5 and 6. Government Exhibit 5 consisted of 499 of the 500 dosage units of purple barrel or red barrel LSD, purchased by Alter from Canatsey, on April 29, 1987. Government Exhibit 6 consisted of 1,499 of the 1,500 dosage units of orange musical-note LSD that Alter purchased from Canatsey on July 13, 1987. Alter testified that the LSD in Government Exhibit 5 was either red or purple barrel, and that these were actually the same type of LSD. Whether it appears purple or red to the beholder, Alter testified, depends upon how one perceives the colors. Franklin testified that the LSD in Government Exhibit 5 was either purple or red barrel, but it was hard to distinguish the colors. Lynn testified that Government Exhibit 5 was red barrel acid, but that there was no difference between red

or purple barrel LSD except for the color. Canatsey testified, however, that these are two different types of LSD, and Cree preferred to purchase purple barrel LSD because it was stronger. Drug Enforcement Administration forensic chemist Terry Allen Dal Cason testified that 200 dosage units of this type of LSD would weigh approximately 1.35 grams. Lynn testified to selling 200 dosage units of this type of LSD to Canatsey on June 30, 1987, and that it was the same type of LSD he had been selling to him for two or three months. Canatsey testified to selling these 200 dosage units of LSD to Cree.

Calvert testified that Government Exhibit 6 contained the type of LSD Cree sold to her on June 30, 1987. Franklin testified that she might have seen Cree possess this type of LSD, but could not be sure. Dal Cason testified that Government Exhibit 6 weighed approximately 9.2 grams.

When these exhibits were offered into evidence, both defendants objected to their admission on grounds of lack of relevance and undue prejudice. In ruling on the admissibility of Government Exhibit 5, Judge Barker remarked to counsel:

> The court's understanding of the law is that circumstantial evidence can be used to prove up the allegations of the indictment.

> With respect to Exhibit 5, the court's notes reflect that prior to the witness' testimony, five other witnesses have given testimony that relate to this exhibit. Furthermore, the court notes that this exhibit was seized during the period of the conspiracy, as charged in the indictment, and these defendants are alleged to be participants in the conspiracy.

The court overrules the objection based on relevance and the 403 balancing test, and will admit Exhibit 5.

Government Exhibit 6 likewise was offered into evidence and admitted over the defendants' objections. In the government's opening statement, the jury was advised that no controlled substances purchased and/or sold by Blanton and Cree would be introduced into evidence. In Cree's opening statement, the jury was advised that there would be no direct evidence that the substances allegedly bought and sold were marijuana and LSD. There also was testimony by Canatsey and Alter that Alter purchased Government Exhibits 5 and 6 from Canatsey, not from Cree. Alter also testified that Cree did not negotiate for, purchase, use, possess or sell these exhibits, and that he did not have the "supposed 200 dosage units that he (Cree) bought" on June 30, 1987. In its closing argument, the government stated that Government Exhibits 5 and 6 were offered to the jury to show the identity of the substance Cree sold to Calvert.

Finally, the district judge instructed the jury that it had to determine beyond a reasonable doubt whether or not the substances in question were in fact LSD and marijuana. She instructed them that they could consider all the evidence in the case that would aid the determination of that issue, which included witness testimony. The court also told the jury that chemical analysis of the controlled substance in issue is not essential to prove the identity of the substances, and that the testimony of a person who observed the defendants in possession of these substances is sufficient if the person is familiar with the substances at issue.

Defendants were convicted of all four counts in the indictment. They appeal.[1]

---

**1.** One ancillary issue requires brief discussion. On October 1, 1988, defendant Blanton wrote to the district judge, asking her to please dismiss Blanton's attorney from her case and to appoint her another attorney. In this letter, Blanton cites to instances during trial where her counsel's performance purportedly was deficient. With this letter, Blanton enclosed another letter she had written to her attorney on July 25, 1988, asking him to move to withdraw. In this letter, Blanton alluded to some of the incidents of allegedly deficient performance that she mentioned in the October 1 letter and expressed various other complaints with her attorney's performance.

Because we view *pro se* pleadings liberally, we will construe Blanton's letter to the district judge and the attached copy of the letter to her counsel as a motion to this court under Circuit Rule 4 to have us dismiss her counsel and appoint her a new appellate attorney. *Cf. United States v. De La Cruz,* 870 F.2d 1192, 1193 (7th Cir.1989) (quoting *United States v. Flowers,* 789

## II. Discussion

### A. *Admission of Government Exhibits 5 and 6*

■ Both defendants argue that admission of Government Exhibits 5 and 6 was error. They claim that this evidence was irrelevant. Blanton and Cree argue that because there was no direct connection between it and them, it did not tend to establish their guilt or innocence. Moreover, defendants contend that even if this evidence was relevant, it was unduly prejudicial, and that the jury was not sufficiently admonished about the limited use of these exhibits as models. We agree with the government, however, that Government Exhibits 5 and 6, which were obtained during the course of the same investigation from the source of supply as the LSD that Cree and Blanton purchased and sold, were properly introduced as circumstantial evidence of the identity and weight of the LSD in issue, and were relevant to the ability of the witnesses to identify LSD.

Evidence is relevant if it sheds light on an element of the crime. *Cf. United States v. Kelley*, 864 F.2d 569, 576 (7th Cir.1989). Whether evidence is relevant is a matter committed to the district court's discretion, and we will reverse the district court's determination that evidence is relevant only when there is an abuse of that discretion. *United States v. Wellman*, 830 F.2d 1453, 1468 (7th Cir.1987); *Young v. Rabideau*, 821 F.2d 373, 377 (7th Cir.), *cert. denied*, 484 U.S. 915, 108 S.Ct. 263, 98 L.Ed.2d 221 (1987). The government did not produce the actual LSD or marijuana that Blanton and Cree bought and sold, nor did it present a chemical analysis thereof at trial. We agree with the numerous circuits that have held that the government is entitled to establish the identity of these substances by the testimony of persons familiar therewith, and does not need to present either direct evidence or chemical analysis thereof. *See, e.g., United States v. McMahon*, 861 F.2d 8, 12 (1st Cir.1988); *United States v. Zielie*, 734 F.2d 1447, 1456 (11th Cir.), *reh'g denied*, 740 F.2d 979 (11th Cir.), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1984); *United States v. Scott*, 725 F.2d 43, 46 (4th Cir.1984); *United States v. Clark*, 613 F.2d 391, 405–06 (2d Cir.1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

Both these exhibits were relevant to the ability of the witnesses to identify LSD. Here, Government Exhibit 5 clearly also was relevant to the identity and weight of the 200 dosage units of LSD that Cree purchased from Canatsey. Lynn testified that he sold 200 dosage units of this type of LSD to Canatsey, who in turn testified, along with Alter, that he sold this LSD to Cree. This also is, according to Alter's testimony, the type of LSD that Alter saw Cree sell to Calvert. Government Exhibit 6 also was relevant because of Calvert's testimony that this was the type of LSD that Cree sold to her. To the extent that this testimony conflicts with Alter's testimony, this is a question of credibility, a matter for the jury into which we do not inquire on appeal. *See, e.g., United States v. Whaley*, 830 F.2d 1469, 1472 & n. 1 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988) *and cases cited therein*. Evidently, the jury believed that Cree sold some type of LSD to Calvert, regardless of whether it was barrel type or musical-note type LSD.

■ Finally, we do not think that the probative value of this evidence was outweighed by any prejudicial effect thereof. Once again, we review the district judge's determination in this regard under the abuse of discretion standard. *Kelley*, 864 F.2d at 576; *United States v. Davis*, 838 F.2d 909, 915 (7th Cir.1988). Moreover, we balance the probative value of the evidence against *undue* prejudice, which is the dan-

F.2d 569 (7th Cir.1986)) (court of appeals, not the district court, is the proper forum for determining whether appointed counsel may withdraw from representing a defendant on appeal); *United States v. Wilkins*, 659 F.2d 769, 771 n. 1 (7th Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981) (court of appeals considered both counsel's motion to withdraw and defendant's letters to court). We have, however, reviewed Blanton's allegations, and find that she has not shown good cause justifying dismissal of her trial counsel and appointment of a new appellate counsel under Circuit Rule 4. *Wilkins*, 659 F.2d at 771 n. 1

ger that defendants would have been convicted of acts other than those charged because of this evidence. *United States v. Birkenstock*, 823 F.2d 1026, 1028 (7th Cir. 1987); *see also Young*, 821 F.2d at 377 ("evidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but because its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented on the crime charged").

Here, the continual reminders to the jury that these exhibits were neither seized from nor in the possession of Blanton and Cree eliminated any unduly prejudicial impact of Government Exhibits 5 and 6 upon the jury. The jury was so advised in opening statements, throughout the testimony of witnesses, in closing arguments and in the district court's instructions to the jury. *Davis v. Lane*, 814 F.2d 397, 399–400 (7th Cir.1987) (demonstrative "shank," or homemade knife, properly was admitted as relevant to question of reasonableness of defendant prison guard's action in shooting plaintiff prisoner; trial judge's admonition to the jury to remember that the plaintiff denied possession of a shank, his instructions to the jury on the demonstrative nature of the shank admitted at trial, and his refusal to let it go into the jury room while the jurors were deliberating eliminated any danger of any unfair prejudice).

Finally, defendants attempt to argue that Government Exhibits 5 and 6 should not have been admissible under Rule 404(b) of the Federal Rules of Evidence. The short answer to this argument is that it was not made at trial, and hence cannot be made on appeal in the absence of a showing of plain error, *United States v. Field*, 875 F.2d 130, 134–35 (7th Cir.1989), and such a showing was not made here.

### B. *Sufficiency of the Evidence*

■ Blanton's argument challenging the sufficiency of the evidence is essentially a "mere presence" argument. That is, Blanton maintains that the most the government was able to prove at trial was that she was present when Cree purchased and/or sold drugs. As we have noted numerous times, the jury's verdict must be upheld if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Blanton's "mere presence" argument ignores, however, the evidence establishing that she carried drugs and drug money, and her statements concerning drug dealing. Franklin testified that Blanton and Cree had talked about all the money they were making, and that Blanton was somewhat upset about all the people who came to her house in Logansport to buy drugs. Blanton argues that when Alter testified that Cree sold Calvert drugs from Blanton's purse and put the money he received from Calvert back into Blanton's purse, he made an erroneous assumption that the purse was Blanton's because it was sitting on the floor beside her chair. Blanton analogizes this assumption to Alter's incorrect assumption that she and Cree were husband and wife (the original indictment referred to Cree as "Mr. Blanton"). This really is an argument that this evidence was circumstantial. This, however, does not prevent its being able to establish her participation in the conspiracy. *United States v. Zambrana*, 841 F.2d 1320, 1346 (7th Cir.1988). Once a conspiracy is shown to exist, moreover, evidence that establishes a particular defendant's participation beyond a reasonable doubt, even if the connection between the defendant and the conspiracy is slight, is sufficient to convict. *Id.* A rational jury could, we believe, find that the purse into which Cree was putting drugs and money and from which he was taking the same belonged to Blanton.

Finally, the fact that Blanton herself may not have been the one to do the actual purchasing or selling of LSD or marijuana, but was "merely present" at those times does not prevent a finding that she was involved in the conspiracy. We have noted

that while "mere presence at the scene of the crime or mere association with conspirators will not themselves support a conspiracy conviction ... presence or a single act will suffice if the circumstances permit the inference that the presence or act was intended to advance the ends of the conspiracy." *United States v. Xheka*, 704 F.2d 974, 988–89 (7th Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983)) (citations omitted); *see also Zambrana*, 841 F.2d at 1346. Here, Blanton's carrying of drugs and drug money advanced the ends of the conspiracy, and thus was sufficient to support a finding that she participated in it.

■ Likewise, we think that there was sufficient evidence to convict Gary Cree. Cree's argument essentially goes like this: because none of the evidence introduced at trial was "evidence" (i.e., drugs) that was purchased from him, sold by him, or found in his possession, there is a complete lack of evidence against him. The only LSD introduced into evidence, Cree maintains, had no connection with him.

As noted above, it was proper for the government to establish the identity and weight of the substances sold by and to Cree by the testimony of persons sufficiently familiar with controlled substances. Alter and Calvert testified about the sale of LSD and marijuana to Calvert. Lynn testified about his sale of 200 units of LSD to Canatsey on June 30, 1987. Alter and Canatsey also testified about Canatsey's sale of these 200 units of LSD to Cree on the same day. As the government points out, the testimony of the Drug Enforcement Administration forensic chemist at trial established that 200 dosage units of the type of LSD purchased by Cree from Canatsey would weigh approximately 1.35 grams.

Alter testified that the LSD that Canatsey sold to Cree looked exactly like the LSD he (Alter) had purchased from Canatsey on April 29, 1987. Jeffrey Lynn, Canatsey's source of supply for this type of LSD, testified that all the LSD he sold to Canatsey came from the same source. Lynn also testified that Canatsey had told him about "Gary" who sold LSD in Logansport, Indiana, and that he had met Cree, sold drugs directly to him and understood from the conversation that Cree was the "Gary" from Logansport. Canatsey testified that in May or June of 1987, he had introduced Cree to Lynn as a friend who was going to purchase LSD. Although Canatsey testified that Cree preferred to purchase purple barrel over red barrel LSD, according to the testimony of Alter and Lynn, these were in fact the same thing, either the same color or the same type of LSD. Whether or not this is so, and whether the LSD sold by Cree to Calvert was red or purple barrel, as testified to by Alter, or orange musical-note, as testified to by Calvert, the resolution of these conflicts in testimony are questions of credibility, the determination of which we do not, as noted above, disturb on appeal.

All of this testimony, as well as other testimony given at trial, was sufficient for a rational jury to determine that the substances sold by Canatsey to Cree and placed in Blanton's purse, and the substances purchased by Calvert were LSD and marijuana, respectively. The testimony of Canatsey, Lynn, Franklin, Calvert, and Alter, all of whom had familiarity with controlled substances, properly established the identity of the substances. Likewise, the testimony of the DEA forensic chemist was sufficient for a jury to find that Cree purchased more than one gram of LSD from Canatsey.

III.  Conclusion

For the reasons discussed above, we AFFIRM the convictions of Glenda Blanton and Gary Cree.