**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Isaac DWECK, Defendant–Appellant.**

**No. 89–1267.**

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1989.

Decided Sept. 10, 1990.

Patricia J. Gorence, Paul Kanter, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Gerald P. Boyle, Milwaukee, Wis., for defendant-appellant.

Before CUDAHY, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Isaac Dweck was charged in a four-count drug indictment and found guilty by a jury on three of the four counts. He was sentenced to a total of eighteen years in prison. Dweck appeals his convictions on those three counts arguing that there was insufficient evidence to find him guilty beyond a reasonable doubt. He also claims that the district court erred in denying his

motion for mistrial when one of his witnesses was questioned about a prior term of imprisonment which he had served. Finally, Dweck argues that the district court should have restricted the government's use of a witness under Criminal Rule 16 because of the government's failure to disclose *Brady* materials. We find no error and affirm the convictions.

## I. *Sufficiency of the Evidence*

The government's principal witnesses were Dennis McCarthy, Joseph Schmidt, Randall Freidl, and Timothy Reilly. Each of these witnesses testified pursuant to a plea agreement. A brief summary of the government's evidence discloses that Dweck supplied cocaine to McCarthy, who along with Schmidt, Freidl, Reilly, and Karen Christensen were involved in an illegal drug operation. Cocaine was purchased in Florida and transported to Milwaukee where it was distributed.

More particularly, the government's evidence indicated that McCarthy first purchased cocaine from Dweck in Florida and resold it to Schmidt in mid-July of 1982. McCarthy asked Dweck if he could obtain a half kilogram of cocaine. Because he felt apprehensive about his first drug transaction with Dweck, McCarthy had Freidl accompany him to Dweck's home. McCarthy and Dweck left Freidl at Dweck's residence and drove to a nearby apartment where they purchased the half kilogram of cocaine for approximately $10,000 to $12,000 in cash. McCarthy stated that after picking up Freidl at Dweck's residence, he and Freidl packaged the cocaine in an empty Passport radar detector box and mailed it to Schmidt in care of the main Post Office in Milwaukee. His testimony was corroborated in part by Freidl who stated that he helped package the first cocaine received from Dweck in a Passport "fuzz buster" box. Schmidt also corroborated this story testifying that he received the cocaine in the Passport "fuzz buster" box at Milwaukee's main Post Office. The testimony of the witnesses was further corroborated by documentary evidence, including the postal receipts bearing Schmidt's signature.

In early fall of 1986, McCarthy discussed with Dweck the possibility of supplying cocaine to the drug operation on a regular basis. During the course of that conversation, Dweck agreed to furnish cocaine to McCarthy's girlfriend, Karen Christensen, or McCarthy's drug customers when McCarthy was out of the country. In return, McCarthy was to receive payment for facilitating the deals.

Because McCarthy was out of the country in November of 1986, Schmidt testified that he contacted Karen Christensen who gave him Dweck's telephone number. According to Schmidt, he called Dweck to arrange a cocaine purchase. When Schmidt arrived at Dweck's home, Dweck called one of his "sources." Dweck and Schmidt thereafter went to the "source's" home to make the purchase. Dweck entered the residence while Schmidt remained in the car. After a short while, Dweck returned to the car with a kilogram of cocaine for which Schmidt paid him approximately $15,000 in cash. After packaging the cocaine at McCarthy's residence and mailing it to himself, Schmidt distributed the cocaine in Milwaukee.

In December of 1986, another drug transaction occurred. According to Schmidt, on this occasion he contacted Dweck by telephone to ask for more cocaine. Schmidt thereafter went to Dweck's home where he and Dweck waited for the "source" to arrive. Upon his arrival, Dweck went to the "source's" car and returned with one half kilogram of cocaine. Schmidt paid for the cocaine, returned to McCarthy's home and later transported the cocaine to Milwaukee by automobile.

On appeal, Dweck argues that the evidence presented at trial was not credible and, thus, insufficient to find him guilty beyond a reasonable doubt as to any violations of 21 U.S.C. § 841(a)(1) [possession with intent to distribute cocaine] and 18 U.S.C. § 2 [aiding and abetting in the commission of the substantive offense charged]. Specifically, Dweck challenges the credibility of the government witnesses because each testified pursuant to a plea agreement with the government and some

of the witnesses admittedly had histories of drug use. As a consequence, Dweck claims the totality of the witnesses' testimony cannot rise to the level of establishing proof beyond a reasonable doubt.[1]

■ We reject this argument. "A court reviewing the sufficiency of the evidence must uphold a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Hammond*, 826 F.2d 577, 579 (7th Cir.1987) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)); *see also United States v. Whaley*, 830 F.2d 1469, 1472 (7th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). In other words, this court will "reverse a conviction for the lack of evidence only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Williams*, 858 F.2d 1218, 1221 (7th Cir.1988) (citing *United States v. Redwine*, 715 F.2d 315, 319 (7th Cir.1983), *cert. denied, Strong v. United States*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984)), *cert. denied, Froschauer v. United States*, 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989); *see also United States v. Angulo*, 864 F.2d 504 (7th Cir.1988).

The jury was fully apprised of the character of each of the government's witnesses and the fact that they received favorable plea agreements in exchange for their cooperation and testimony at Dweck's trial. As such, the jury was clearly in position to determine the credibility of the govern-

ment's witnesses. Drawing all reasonable inferences in favor of the government, Dweck's conviction on each count is supported by sufficient evidence.

## II. *Evidence of Prior Imprisonment*

Julie Dweck, the appellant's wife, testified on behalf of her husband that she met him in 1979, one month after the death of his father. She stated that at that time he was unemployed and living off a $500,000 inheritance from his father. She further testified that her husband had never dealt drugs or had large sums of cash at their home. The thrust of her testimony was that her husband had always been a clean living, responsible citizen who had never been involved with drugs.[2]

In an effort to impeach the credibility of Mrs. Dweck, the government sought to show that she could not have met her husband in 1979 as she claimed. The fact is that in 1979 Dweck was serving a prison term following a conviction for distribution of cocaine. During cross-examination, Mrs. Dweck was asked by the prosecutor when she met her husband. The following colloquy took place:

Q. ... About when did you meet him?

A. About 1979.

.    .    .    .    .

Q. ... Can you tell me when, what year you met your husband? You got married in 1983, is that right?

A. I have a problem with dates. I'm highly confused. Even when I graduated from college. Okay.

Q. Just take your time. I don't mean to make you nervous so—

---

1. Dweck also argues that because statements were allowed into evidence under the co-conspirators exception, Federal Rule of Evidence 801(d)(2)(E), a *closer scrutiny is warranted* when reviewing a sufficiency of the evidence challenge on appeal. That is not the case. There is no rule in this circuit warranting closer scrutiny for challenges based on the sufficiency of the evidence when evidence is admitted under a hearsay exception. *See, e.g., United States v. Zambrana*, 841 F.2d 1320 (7th Cir.1988); *United States v. Garner*, 837 F.2d 1404 (7th Cir. 1987), *cert. denied*, 486 U.S. 1035, 108 S.Ct. 2022,

100 L.Ed.2d 608 (1988); *but see United States v. Silverman*, 861 F.2d 571 (9th Cir.1988).

2. According to Mrs. Dweck, sometime after they were married in 1983, Dweck obtained employment on a commission basis with a company called Theft Busters. Mrs. Dweck also testified that she did not know how her husband was paid by Theft Busters, never saw any pay stubs, nor did she know if he had an additional source of income. Mrs. Dweck also testified that she was unaware that in June, 1987, her husband had $220,000 in a separate bank account.

A. Okay. What do you want to know, when I met my husband?

Q. Right.

A. What year? '79 or '80, my last year of college.

(Tr. Vol. 2, pgs. 147–149.) During recross-examination, the Assistant United States Attorney elicited the following:

Q. I'm just trying to establish whether, which of the two years that, or approximately when it was. And then you dated for a period of time after that?

A. Yes.

Q. So, if it was like the summer of 1979 then you dated until you were married?

A. Right.

Q. Okay. Did you date all that time or was there, was your husband not available for part of that time?

A. What do you mean not available?

Q. Okay. During part of that time was your husband not living in Florida?

A. As long as I've known my husband he's always lived in Florida.

Q. Was your husband in prison during part of that time?

A. Before I knew him.

Ms. Leesfield: (Dweck's attorney) Your Honor, I object to the question.

The Court: Overruled.

Ms. Leesfield: That means you can answer.

A. Okay. Before I knew him.

Ms. Gorence: (AUSA) I have no further questions.

(Tr. Vol. 2, pgs. 157–158).

Nothing further about Dweck's prior imprisonment was brought to the attention of the jury by the government. The jury was never made aware of the nature of Dweck's prior conviction or his thirty-six month term of imprisonment.

After the witness was excused, and outside the presence of the jury, defense counsel moved for a mistrial on the specific ground that Dweck's prior conviction was more than ten years old. The government responded that the question was designed to "impeach Mrs. Dweck with her statement when she continued to state ... that she had known him from that time and that he was in Florida." The motion for mistrial was denied. The district judge found that the question was asked in an effort to impeach the credibility of Mrs. Dweck after she had been given a number of opportunities to correct her testimony.

■ Dweck's objection was obviously based on the provisions of Federal Rule of Evidence 609 which prohibit impeachment by the use of convictions which are more than ten years old. However, Dweck now concedes, as he must, that Rule 609 "is not really an issue here because that would only come into play if the appellant had testified." We certainly agree that Rule 609 is inapplicable for it applies only when a *prior conviction of the witness testifying* is brought out on cross-examination.[3]

■ Recognizing that the specific ground of his objection made at trial was inapplicable, Dweck is forced to raise new grounds on appeal which were not presented to the district court. Dweck now argues simply that the reference to prior imprisonment was "unfair" and that the district court should have had an opportunity to determine if the matter was "more probative than prejudicial."

The question posed by counsel for the government was designed to lead to an answer which would impeach the credibility of Mrs. Dweck. Thus, the question was of a type generally permissible under Federal Rule of Evidence 607.[4] For the purpose of impeachment, the subject was neither immaterial nor irrelevant. In this situation, a motion for mistrial based on an objection under Federal Rule of Evidence 403, however, would have focused on a legitimate

---

3. Notwithstanding its inapplicability, Dweck's prior conviction was within the ten-year time limitation set forth in Rule 609(b). Dweck was previously sentenced in March of 1979, and the examination of the witness occurred in September of 1988.

4. Federal Rule of Evidence 607 provides: "Credibility of a witness may be attacked by any party, including the party calling him."

issue—that is, whether the probative value of Dweck's prior imprisonment was substantially outweighed by other trial concerns including the danger of unfair prejudice to Dweck.

■ Because this argument was not made at trial, it cannot be made on appeal absent a showing of plain error. *United States v. Blanton*, 884 F.2d 973, 978 (7th Cir.1989). Consequently, we consider whether the mention of Dweck's prior imprisonment amounted to plain error under Federal Rule of Criminal Procedure 52(b). As interpreted by the Supreme Court, Rule 52(b) "authorizes the Courts of Appeals to correct only 'particularly egregious errors' ... those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings....'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citations omitted). The Supreme Court in *Young* went on to say that a reviewing court cannot properly evaluate a case except by viewing an assertion of plain error against the entire record. *Id.* at 16, 105 S.Ct. at 1046. As a cautionary reminder, the Court reiterated:

> In reviewing criminal cases, it is particularly important for appellate courts to relive the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal trial into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution. (citation omitted).

*Id.* at 16, 105 S.Ct. at 1047. Viewing this case as a whole, it is readily apparent that the reference to Dweck's prior imprisonment did not result in a miscarriage of justice or actual prejudice. The case mounted against Dweck was quite strong.

There was overwhelming evidence that Dweck had made a number of direct sales of cocaine. It is highly unlikely that in the course of a trial spanning several days the single brief reference to a prior imprisonment affected the outcome of this case. The government made no further reference to the imprisonment and the jury was unaware that Dweck's prior conviction involved drugs. The jury, in fact, acquitted Dweck on one of the four counts of which he was charged. There was no plain error resulting from the reference to Dweck's prior imprisonment.

Whether the reference to Dweck's prior imprisonment runs afoul of the balancing test of Rule 403 is a close question—but one we need not resolve in light of our determination that there was no plain error.[5] *Blanton*, 884 F.2d at 978.

## III. Brady *Material*

On the day of trial, Dweck's counsel moved for sanctions pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He claimed that certain material relating to drug trafficking and drug use by McCarthy prior to 1986 had not been furnished to his counsel. In addition, a presentence report prepared in another case involving McCarthy had not been made available to Dweck. The government responded that all *Brady* material had been provided to the defendant. The district judge conducted an *in camera* examination of the 300 pages in the government's case file in Cause No. 87 CR 155 (E.D.Wis.), an unrelated drug smuggling and money laundering case involving some 26 defendants including McCarthy.[6] Following the *in camera* examination, Judge Evans stated:

---

5. The reference to Dweck's prior imprisonment was, at worst, harmless error. *See United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). Again viewing the evidence as a whole, the reference to Dweck's prior imprisonment had no "substantial and injurious effect or influence in determining the jury's verdict." *Id.* We should point out, however, that it would have been preferable for counsel for the government to request a sidebar confer-

ence in advance and advise the court that she intended to pursue impeachment of the witness using the matter of Dweck's prior imprisonment in 1979.

6. It appears that McCarthy's presentence report was not included in the material examined *in camera* because it was in the possession of the probation department and not available to the government. Although the court found no *Brady* violation after reviewing the government's

I reviewed all the material last night and in my opinion there is no Brady material here that's been withheld by the government.

The fact of the matter is that Mr. McCarthy has admitted up and down that he is up to his eyeballs in the drug business and has been dealing, selling, doing everything that a drug dealer does, false names and what have you, and the long reports of the DEA here are simply McCarthy's statements about other people that he's done long and big time drug dealing with. There is nothing here that goes to the charges against Mr. Dweck. There is no fodder for even attacking his credibility beyond what has already been noted. For instance, he says on page 13 that he was freebasing cocaine. That's already in the record. The jury has heard that he has done that. Mr. Dweck's name is mentioned a few times in these reports and he's testified consistent with that. So I find no Brady violation, and not even the smell of one that would require further analysis and review of this point by me.

In addition to the analysis by Judge Evans, the record demonstrates that Dweck's counsel thoroughly and at length cross-examined McCarthy eliciting detailed testimony of McCarthy's prior convictions, use of false names and extensive illegal drug involvement.

Dweck succinctly describes his position on this third issue as follows: "Everything in the world that the government has about Dennis Sean McCarthy and his life of drugs [during the period covered by the indictment] is germane and therefore discoverable under *Brady.*" Dweck further contends that whether or not the information concerning McCarthy is cumulative is of no consequence—it must be disclosed.

There is no question that in *Brady,* the Supreme Court held that the government must disclose evidence that is both favorable and material to the issue of guilt. Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) (citing *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)). Nevertheless, the Supreme Court has also held the prosecutor need not routinely deliver his or her complete files to defense counsel. *United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). "The evidence [withheld by the government] is material only if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *see also Agurs,* 427 U.S. at 111–12, 96 S.Ct. at 2401. Implicit in the materiality requirement "is a concern that the suppressed evidence might have affected the outcome of the trial." *Id.* 427 U.S. at 104, 96 S.Ct. at 2398. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.* at 109–10, 96 S.Ct. at 2400. Therefore, the prosecutor is only required to disclose evidence favorable to the defendant that if suppressed, would deprive the accused of a fair trial. *Bagley,* 473 U.S. at 675, 105 S.Ct. at 3380. In other words, the prosecutor does not violate his "constitutional duty of disclosure unless his omission is of sufficient significance to result in a denial of the defendant's right to the fair trial." *Agurs,* 427 U.S. at 108, 96 S.Ct. at 2400.

■ Generally, where impeachment evidence is merely cumulative and thereby has no reasonable probability of affecting the result of trial, it does not violate the *Brady* requirement. *See, e.g., United States v. Jackson,* 780 F.2d 1305, 1311 (7th Cir.1986); *United States v. Polizzi,* 801 F.2d 1543, 1553 (9th Cir.1986); *United States v. Mackey,* 571 F.2d 376, 389 (7th Cir.1978).

file, the court did not specifically rule on the request for disclosure of the presentence report. Defense counsel did not seek a copy of the

report from the probation department and the presentence report is not included in the record on appeal.

■ As we have noted earlier, the jury had a clear picture of McCarthy as a government informant and his history as a major drug dealer and user. Dweck's claim that "everything in the world" that the government had regarding McCarthy and his life of drugs from 1980 through 1988 had to be provided under *Brady,* is incorrect as a matter of law and provides no independent basis for the reversal of his conviction.

■ Finally, to the extent that Dweck argues that the district judge abused his discretion in concluding in his analysis that the government case file contained no impeachment information, he lacks any basis in the record to support such a claim. Dweck chose not to include the material examined by the district judge *in camera* as a part of the record on appeal. As we held in *United States v. Anderson,* 724 F.2d 596, 599 (7th Cir.1984), "[i]t is not our duty to search beyond the record to see if some basis for a reversal exists because of a claimed error which has no foundation other than speculation. It is the duty of an appellant to bring the record to this court to support each claim for reversal." *Id.* What the court further observed in *Anderson* certainly may apply here—that is, "[n]o doubt [the appellant] entertained the idea, as do we, that the district judge fairly and conscientiously examined [the *in camera* material] and correctly found no basis for [its disclosure]." *Id.*

On the basis of the law and the record in this case, we find no violation of the government's duty to disclose impeachment information under *Brady.*

### IV. *Conclusion*

Based on our examination of the record and reviewing the evidence in the light most favorable to the government, we hold that there was sufficient evidence to support Dweck's convictions. We further hold that there was no plain error with respect to the reference to Dweck's prior conviction. Finally, the record before us discloses no violation of the government's duty to disclose information concerning its witness, Dennis McCarthy.

For the reasons set forth above, the convictions of Isaac Dweck are AFFIRMED.